STATE of Wisconsin, Plaintiff-Respondent,

v.

Aaron O. SCHREIBER, Defendant-Appellant.†

Court of Appeals

*No. 01–1511–CR. Submitted on briefs January 25, 2002.—
Decided February 13, 2002.*

2002 WI App 75

(Also reported in 642 N.W.2d 621.)

† Petition to review denied 5-21-02.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *William J. Donarski* of *Vande Castle & Donarski, S.C.,* Green Bay.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Jennifer E. Nashold,* assistant attorney general, and *James E. Doyle,* attorney general.

Before Nettesheim, P.J., Anderson and Snyder, JJ.

¶ 1. SNYDER, J. Aaron O. Schreiber appeals from a judgment of conviction for taking and driving a motor vehicle without the owner's consent and an order denying his motion for postconviction relief. Schreiber makes two arguments: (1) that the sentencing court imposed an unduly harsh sentence and failed to properly apply the appropriate sentencing factors and (2) that the sentencing court relied upon impermissible factors in violation of his First Amendment rights. We disagree with both contentions and affirm the judgment and order.

## FACTS

¶ 2. On January 7, 2000, Schreiber was convicted of taking and driving a motor vehicle without the owner's consent, contrary to WIS. STAT. § 943.23(2) (1999–2000), after entering a no contest plea pursuant to a plea bargain. On March 28, 2000, sentence was withheld and Schreiber was placed on probation for four years. At this sentencing hearing, the trial court made the following comments:

693

> He seems to be gang orientated and gang involved . . . .
> He has somewhat of an attitude which may be related
> to his gang involvement or related to just the way he
> feels about things but he does seem to have an attitude
> against authority, against people in authority . . . . As
> conditions of probation, the condition of probation will
> be subject to the usual rules of the Department, the
> rules and conditions that they may impose . . . . *The
> defendant is not to contact — have contact with gang
> members. He is not to be involved in any gang activity.
> The quickest way for him to get back into prison is if he
> gets involved in gang activity.* (Emphasis added.)

Despite this clear admonition, on the very day he was sentenced, Schreiber wrote letters to other gang members, asked for gang membership fees and ordered assaults on three persons.

¶ 3.   In November 2000, Schreiber's probation was revoked and on December 20, 2000, he returned to the trial court for sentencing after revocation. A presentence report recommended a thirty-month prison term. At sentencing, the Winnebago County Sheriff's Department presented the trial court with some poetry written by Schreiber while he was in jail. The verses read as follows:

> Automatic weapons or pipe bombs of homemade na-
> palm addressed to those bystanders supposed innocent

> [H]appiness is the smell of plastic explosives that leave
> human flesh smoking and cause delicious fits of confu-
> sion cause I chose your life's conclusion

> [H]appiness is when you learn exactly how to burn a
> carcass done well and not leave the trace of evidence or
> smell

> [H]appiness to me is a sea of red produced to the dead
> and a girl that understands my world.

> . . . [E]ventually the[y]'ll have to release the beast into
> the streets to tamper with peace. My destiny awaits me

at the White House 1600 Penselvania [sic] Ave. When will it happen Any Day Now.

¶ 4.　The prosecution recommended the maximum sentence of five years in light of Schreiber's "unproductive period of probation and jail time," noting that Schreiber had started with six months' jail time as a condition of probation but upon completion he was transferred to a boot camp as an alternative to revocation "in light of all of the violations that went on while he was still in jail." The prosecution also observed that Schreiber was terminated from the boot camp "in light of continuing violations primarily of gang activity and . . . total disregard and continued blatant violations of appropriate behavior."

¶ 5.　The trial court imposed the five-year maximum sentence. The trial court noted that despite the previous warnings, Schreiber continued to be involved in gang activity and had indicated that he was "not willing to give up [his] gangster disciple lifestyle." The trial court stated that it had originally planned to follow the thirty-month recommendation from the presentence report but then explained:

> I don't want you out there. The only thing I can do to make sure that happens is to give you a sentence that I think under the circumstances guarantees . . . the community [is] protected from you, and you have had every opportunity . . . to follow through with probation.

¶ 6.　On May 1, 2001, Schreiber filed a motion for postconviction relief asking that his sentence be vacated or modified. This motion was heard on May 10, 2001, and denied by order on May 15, 2001. Schreiber appeals.

## DISCUSSION

¶ 7.   The standard of review of a motion for sentence modification is whether the sentencing court erroneously exercised its discretion. *See Ocanas v. State*, 70 Wis. 2d 179, 185, 233 N.W.2d 457 (1975). There is a strong public policy against interfering with the trial court's sentencing discretion and we must assume that the sentencing decision was reasonable. *State v. Littrup*, 164 Wis. 2d 120, 126, 473 N.W.2d 164 (Ct. App. 1991). An erroneous exercise of discretion will be found only if the sentence is excessive, unusual and so disproportionate to the offense committed as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances. *Ocanas*, 70 Wis. 2d at 185.

¶ 8.   The three primary factors a sentencing court should consider in sentencing are the gravity of the offense, the defendant's character and rehabilitative needs and the need to protect the public. *State v. Echols*, 175 Wis. 2d 653, 682, 499 N.W.2d 631 (1993). Elements of these factors include a record of criminal offenses, a history of undesirable behavior patterns, the defendant's personality, character and social traits, the results of a presentence investigation, the defendant's age, educational background and employment record, the defendant's demeanor at trial and his or her remorse, repentance and cooperativeness. *State v. Jones*, 151 Wis. 2d 488, 495, 444 N.W.2d 760 (Ct. App. 1989). The weight assigned to each factor is particularly within the trial court's discretion. *State v. Wickstrom*, 118 Wis. 2d 339, 355, 348 N.W.2d 183 (Ct. App. 1984).

¶ 9. Nonetheless, a trial court does not possess unfettered sentencing discretion; a sentence may not be based on constitutionally invalid grounds, such as activity or beliefs protected by the First Amendment. *State v. J.E.B.*, 161 Wis. 2d 655, 663, 469 N.W.2d 192 (Ct. App. 1991). To show that his sentence was excessive, unusual or disproportionate to the offense, Schreiber must demonstrate that the record contains an unreasonable or unjustifiable basis for the sentence. *Id.* at 661.

■

¶ 10. Schreiber contends that the sentencing court imposed an unduly harsh sentence and failed to properly apply the appropriate sentencing factors. Schreiber specifically argues that his sentence was unduly harsh because he received the maximum sentence when the appropriate factors do not support such a result. We disagree with these contentions.

¶ 11. We reiterate that the three primary factors a court must consider in sentencing are the gravity of the offense, the defendant's character and rehabilitative needs and the need to protect the public. *Echols*, 175 Wis. 2d at 682. The trial court addressed the first factor:

> The underlying offense is a serious offense especially when you look at it the way that you went about with the understanding that you were specifically looking for a vehicle with the keys in it. And although it is a property offense, I consider it to be fairly serious because you take this person's vehicle, you leave the area, and you use it as your own. And there is a lot of premeditation involved in that offense. And so it is not just a situation where you've decided you are going to go joyriding. It is a situation where you are out specifically looking for a vehicle to use because you do not

want to take the time to go out and get it like everybody else does by working and paying for it.

¶ 12. The trial court then concentrated on the remaining two factors: Schreiber's character and rehabilitative needs and the need to protect the public. The trial court relied primarily on Schreiber's continued involvement in gang activity despite the original sentencing court's warning that he would get prison time if such involvement continued. The sentencing court noted that Schreiber had "not taken one step to follow through with probation," that he indicated that he was "not willing to give up [his] gangster disciple lifestyle" and that he wanted to be revoked. The trial court observed that Schreiber had a criminal history, notably an attempted armed robbery and possession of crack cocaine, and that he had spent time in segregation.

¶ 13. The trial court stated:

One of the very last pieces of advice [the previous sentencing court] gives to you is: "The quickest way for you to get back into prison is to be involved in gang activity . . . ." The day that he sentences you, you go and you send letters to other gang members asking for membership fees, order beatings of three other male individuals.

. . . [T]here were several indications that you spent time in segregation before you were sentenced. Now, you have spent time in segregation again while you are on revocation status . . . . You are again placed on segregation numerous times for making hooch, possession of gang material, and disorderly conduct. Then Ms. Stauber provides to me this November, 2000 report . . . . Unbelievable, Mr. Schreiber.

You scare me. You scare me from several perspectives. When the presentence report was being done

there are indications in the presentence report that you are exaggerating the type of involvement that you had in the original attempted armed robbery. For what purpose, I don't know, but if you want to be a big shot in the eyes of these gang members because you want to go to prison, you are going to have that opportunity. If you think that that is going to make you a bigger gang member and a more important member within the membership, you have done everything that you have to to get there. As I indicated, you are a scary person, Mr. Schreiber. There is no chance that I'm going to release you out into the streets.

¶ 14.   We conclude that the sentencing court properly considered the three primary sentencing factors—the gravity of the offense, the defendant's character and rehabilitative needs and the need to protect the public. *Id*. Schreiber argues that none of these three factors support the maximum sentence. He argues that his gang affiliation should not have been considered because he was "already punished for that conduct by having his probation revoked" and to sentence him based upon that conduct is "double punishment" and excessive. Schreiber cites to no authority for this proposition and it is well established that revocation is not considered punishment for double jeopardy purposes. *State ex rel. Flowers v. DHSS*, 81 Wis. 2d 376, 383–85, 260 N.W.2d 727 (1978).

¶ 15.   The weight assigned to each sentencing factor is predominantly within the trial court's discretion. *Wickstrom*, 118 Wis. 2d at 355. A five-year maximum sentence, under the circumstances presented here, is not so excessive, unusual and so disproportionate to the offense committed as to shock public sentiment. *Ocanas*, 70 Wis. 2d at 185.

¶ 16. Schreiber further argues that the sentencing court relied upon impermissible factors in violation of his First Amendment rights. Schreiber relies on *Dawson v. Delaware*, 503 U.S. 159 (1992), in support of his belief that consideration at sentencing of protected First Amendment speech is constitutionally impermissible. The question presented in *Dawson* was whether the First Amendment prohibited the introduction in a capital sentencing proceeding of the fact that the defendant was a member of the Aryan Brotherhood where this evidence had no relevance to the issues being decided. *Id.* at 160. In *Dawson*, the United States Supreme Court specifically rejected Dawson's broad contention that the Constitution forbids the consideration in sentencing of any evidence concerning First Amendment protected activities; the Court specifically observed that a sentencing court "has always been free to consider a wide range of relevant material" and that the Constitution "does not erect a per se barrier to the admission of evidence" of First Amendment-protected activities. *Id.* at 164–65. A sentencing court may consider writings and statements otherwise protected so long as there is a sufficient nexus to the defendant's conduct and where the writings are relevant to the issues involved. *See id.* at 164. *Dawson* does not support Schreiber's cause in this appeal.

¶ 17. The issue before the trial court at sentencing after revocation was not only the underlying crime but also Schreiber's performance while on probation. A condition of probation, as the original sentencing court specifically alerted Schreiber, was no gang activity. Schreiber was expressly warned about the consequences of such activity while on probation and his continued gang involvement and conduct were relevant

to his sentencing after revocation. Thus the consideration of Schreiber's jail writings was not an erroneous exercise of sentencing discretion.

¶ 18.   Schreiber also implicitly argues that the poetry was not sufficiently linked to the relevant sentencing factors. We disagree. Again, we must bear in mind the condition of probation prohibiting gang activity. The very day he received probation, Schreiber violated that condition by resuming his gang activities and ordering the beating of certain persons. The lyrics found in Schreiber's cell refer to weapons and the joy of inflicting violence on others. At the postconviction motion hearing, the trial court expressly found a nexus between this poetry, Schreiber's gang activity and the letter that he wrote the very day he received probation.

## CONCLUSION

¶ 19.   The trial court exercised proper discretion in its sentence and in its refusal to modify that sentence. The trial court addressed the appropriate sentencing factors and the maximum sentence imposed is not so excessive, unusual or disproportionate so as to shock public sentiment. In addition, the trial court did not rely on impermissible factors when it considered, among other things, the contents of the poetry found in Schreiber's cell. We therefore affirm the trial court.

*By the Court.*—Judgment and order affirmed.