STATE of Wisconsin, Plaintiff-Respondent,

v.

Germaine M. TAYLOR,
Defendant-Appellant-Petitioner.

Supreme Court

*No. 2004AP1092–CR. Oral argument November 16, 2005.
—Decided March 8, 2006.*

2006 WI 22

(Also reported in 710 N.W.2d 466.)

For the defendant-appellant-petitioner there were briefs and oral argument by *Martha K. Askins,* assistant state public defender.

For the plaintiff-respondent the cause was argued by *Gregory M. Weber,* assistant attorney general, with whom on the brief was *Peggy A. Lautenschlager,* attorney general.

¶ 1. JON P. WILCOX, J. The defendant, Germaine M. Taylor (Taylor), seeks review of an unpublished decision of the court of appeals, which affirmed

Taylor's judgment of conviction for second-degree sexual assault of a child and an order of the Racine County Circuit Court, Allan B. Torhorst, Judge, denying his motion for postconviction relief.

¶ 2. Taylor contends the circuit court did not properly explain its reasoning behind the sentence imposed and the sentence itself is unduly harsh and excessive and should therefore be vacated. We disagree and conclude that under our well-established standards for reviewing the circuit court's exercise of its sentencing discretion, and in light of the individual facts and circumstances of this case, the circuit court exercised proper discretion in its sentence and in its refusal to modify that sentence. Accordingly, we affirm the court of appeals.

I

¶ 3. On April 29, 2002, the State filed a criminal complaint charging Taylor with second-degree sexual assault of a child, under Wis. Stat. § 948.02(2) (1999–2000).[1] The complaint alleged that on or about September 2001, Taylor unlawfully and feloniously had sexual intercourse with the victim, S.R., who had not attained the age of sixteen years.[2] The complaint arose when an employee of the Racine County Human Services Department informed the Racine Police Department that S.R. became pregnant by engaging in non-

---

[1] All subsequent references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise indicated.

[2] At the time of the sexual assault, Taylor was nineteen years old, and S.R. was fifteen years old. Taylor states in his brief that he was eighteen years old, but this statement is belied by the dates cited in the criminal complaint and other documents in the record, and by statements of Taylor's counsel at the sentencing hearing.

forced sexual intercourse with Taylor. S.R. indicated that she had sexual intercourse with Taylor on two occasions in 2001.

¶ 4. Taylor met S.R. while he was living at the Transitional Living Apartment in Racine on probation for a previous conviction of second-degree sexual assault of a child. S.R. and a friend were visiting another resident of the facility, Maurice Smith (Smith). On a later date, the four met at Smith's sister's house and got into a vehicle. S.R. reported that she did not know where they were going, but they ended up in Green Bay at Smith's cousin's house. S.R. stated that she had sexual intercourse with Taylor after consuming wine and liquor. The two had sex again at Taylor's aunt's house. Taylor stated he believed S.R. was eighteen.

¶ 5. Second-degree sexual assault of a child was classified as a Class BC felony when the criminal complaint was filed. Wis. Stat. § 948.02(2). This offense subjected Taylor to a fine not to exceed $10,000 or imprisonment not to exceed 30 years, or both. Wis. Stat. § 939.50(3)(bc).[3] Additionally, Taylor was charged as a repeater under Wis. Stat. § 939.62, which increased his maximum imprisonment exposure to not more than 40 years, due to a previous conviction of second-degree sexual assault of a child.

---

[3] On July 26, 2002, the Wisconsin Legislature enacted 2001 Wisconsin Act 109, which amended Wis. Stat. § 948.02(2) from a Class BC felony to a Class C felony. The act also amended the classification of felonies under Wis. Stat. § 939.50. Under the new statutory scheme, the penalty for a Class C felony is a fine not to exceed $100,000 or imprisonment not to exceed 40 years, or both. Wis. Stat. § 939.50(3)(c) (2003–04). The BC felony classification was repealed. The act did not take effect until February 1, 2003.

¶ 6. This previous conviction arose from an incident in February or March 1999 when Taylor had sexual intercourse with the victim, K.A.H., who had not obtained the age of sixteen years.[4] This complaint, filed on October 21, 1999, arose when an employee of the Racine County Human Services Department informed the Racine Police Department that K.A.H. was pregnant and she had indicated that Taylor was the father. When Taylor was questioned by the police, he stated the following: (1) he was one of six boys having sex with the victim; (2) he and K.A.H. had engaged in consensual sexual intercourse with protection on two occasions at K.A.H.'s home a few days apart in early 1999; and (3) he was not the father of the child.[5]

¶ 7. Taylor entered a guilty plea on April 28, 2000, and the Racine County Circuit Court, Judge Emily Mueller presiding, entered judgment of conviction against Taylor on July 5, 2000. Judge Mueller withheld sentencing and Taylor was placed on a two-year period of probation. Sixty days of conditional jail time was given as a condition of probation; however, this time was stayed. Furthermore, he was ordered to have no sexual contact with anyone under the age of eighteen as a condition of his probation.

¶ 8. While on probation, Taylor's probation agent discovered that Taylor impregnated a seventeen-year-old girl, B.K., in September 2000. At the time, Taylor

---

[4] At the time of the sexual assault, Taylor was sixteen years old, and K.A.H. was fourteen years old.

[5] According to the presentence investigation report (PSI) prepared prior to sentencing in Taylor's first sexual assault conviction, Taylor explained the situation differently to the Department of Corrections (DOC) agent. He stated that he and the victim had been dating from June 1998 through April 1999, and they began a sexual relationship in October 1998.

told his agent that he did not believe he was in violation of his probation because he thought he was only prohibited from having sex with individuals who were sixteen years or younger. Taylor was placed in custody, and he served the 60–day sentence that had been initially stayed by the court.

¶ 9. In October 2001, Taylor failed to report to his probation agent and was in absconder status until he was taken into custody on June 19, 2002. Taylor was charged on this date with resisting or obstructing an officer under Wis. Stat. § 946.41(1).

¶ 10. During the period of time that he was gone from supervision, Taylor assaulted B.K. and damaged her motor vehicle. This assault led to a charge of criminal damage to property under Wis. Stat. § 943.01(1) filed on March 22, 2002.

¶ 11. Taylor's probation was revoked on August 9, 2002, for these and other probation violations, and he returned to court before Judge Mueller on September 3, 2002, for sentencing after revocation. Judge Mueller sentenced Taylor to an indeterminate five-year sentence.

¶ 12. In the current case, an information was filed on July 3, 2002. Taylor also waived his right to a preliminary hearing, and pled not guilty in open court before a court commissioner on the same date. On October 25, 2002, before Judge Allan B. Torhorst, Taylor changed his plea. Pursuant to a plea agreement, Taylor pleaded guilty to second-degree sexual assault of a child without the repeater enhancer. Additionally, the misdemeanor charges of criminal damage to property and resisting or obstructing an officer were dismissed but would be read-in for dispositional purposes at the time of sentencing. For the State's part, it recom-

mended prison, but stood silent as to the amount of prison time. The court also ordered a presentence investigation report (PSI).[6]

¶ 13. On April 29, 2003, the court entered judgment of conviction and sentenced Taylor to a bifurcated sentence of 18 years, with 12 years of initial confinement and 6 years of extended supervision, consecutive to the 5–year sentence imposed by Judge Mueller. As part of the PSI, the Department of Corrections (DOC) recommended a sentence of 12 years with 6 years of initial confinement and 6 years of extended supervision, to be served consecutive to Judge Mueller's sentence.

¶ 14. Taylor filed a motion for postconviction relief on December 10, 2003, requesting that the court order resentencing for two reasons: (1) the court misunderstood the presentence recommendation;[7] and (2) the sentence was unduly harsh. After a hearing on March 18, 2004, the court denied the motion in a written decision and order filed April 8, 2004. The court concluded it had merely misspoken when it indicated the DOC recommendation, but such misstatement was immaterial to the court's conclusions and ultimate sentence. After reviewing the sentencing transcript, the court continued to believe that "Taylor is an absolute and legitimate threat to the community by his failure to comply with Wisconsin's law prohibiting sexual assault." In sum, the circuit court concluded it imposed an

---

[6] The initial PSI was prepared on December 27, 2002, and later amended on March 7, 2003, after defense counsel requested that Taylor's family be contacted in preparation of the report, as opposed to relying on a PSI relating to Taylor's first conviction for second-degree sexual assault of a child.

[7] At the sentencing hearing, the court stated the DOC recommended eighteen and one-half years, as opposed to the correct recommendation of twelve years.

appropriate and necessary sentence on Taylor given the facts and circumstances of the case.

¶ 15. Taylor appealed, and the court of appeals affirmed. The court stated in conclusion: "We are persuaded that, given Taylor's penchant for sexually assaulting young girls and his belligerent display at sentencing[8], the sentence imposed here would neither shock public sentiment nor violate the judgment of reasonable people." *State v. Taylor,* No. 2004AP1092–CR, unpublished order, at 4 (Wis. Ct. App. Dec. 29, 2004).

¶ 16. Taylor then filed a petition for review in this court, and we granted review only as to the second issue presented, namely: Is a sentence of 12 years of initial confinement and 6 years extended supervision excessive for this nineteen-year-old defendant who had nonforced sexual intercourse with a fifteen-year-old girl? We conclude that under the totality of the facts and circumstances of this case, the sentence is not excessive, and we affirm the court of appeals.

II

¶ 17. The standards governing appellate review of an imposed sentence are well settled.[9] A circuit court exercises its discretion at sentencing, and appellate

---

[8] According to the sentencing transcript, Taylor repeatedly argued with the court, at one point stating, "Fuck this shit." Once sentenced, Taylor stated, "I'll be back, bitch-ass punk." The court had the record reflect that the deputies took Taylor out of the courtroom after this latter outburst.

[9] Taylor argues that "this court should no longer search the record for evidence to support the trial court's sentence." We recently reaffirmed the standards of *McCleary v. State,* 49 Wis. 2d 263, 182 N.W.2d 512 (1971). *See State v. Gallion,* 2004 WI 42,

review is limited to determining if the court's discretion was erroneously exercised. *State v. Gallion,* 2004 WI 42, ¶ 17, 270 Wis. 2d 535, 678 N.W.2d 197; *see also McCleary v. State,* 49 Wis. 2d 263, 277, 182 N.W.2d 512 (1971) ("It is thus clear that sentencing is a discretionary judicial act and is reviewable by this court in the same manner that all discretionary acts are to be reviewed."). "Discretion is not synonymous with decision-making. Rather, the term contemplates a process of reasoning. This process must depend on facts that are of record or that are reasonably derived by inference from the record and a conclusion based on a logical rationale founded upon proper legal standards." *Id.* at 277.

¶ 18. "The sentencing decisions of the circuit court are generally afforded a strong presumption of reasonability because the circuit court is best suited to consider the relevant factors and demeanor of the convicted defendant." *State v. Borrell,* 167 Wis. 2d 749, 781–82, 482 N.W.2d 883 (1992) (citing *State v. Harris,* 119 Wis. 2d 612, 622, 350 N.W.2d 633 (1984)). "Therefore, the convicted defendant must show some unrea-

---

¶ 76, 270 Wis. 2d 535, 678 N.W.2d 197 (quoting *McCleary,* 49 Wis. 2d at 277) ("Although we do not change the appellate standard of review, appellate courts are required to more closely scrutinize the record to ensure that 'discretion was in fact exercised and the basis of that exercise of discretion is set forth.' "). We note that because Taylor was sentenced a little less than a year before we released *Gallion,* its holding does not apply to this case. *See id.* ("[W]e reaffirm the standards of *McCleary* and require the application to be stated on the record for future cases.").

Because our analysis resolves the question presented for review, we decline to review *State v. Grindemann,* 2002 WI App 106, 255 Wis. 2d 632, 648 N.W.2d 507, as being unnecessary to this opinion.

sonable or unjustified basis in the record for the sentence imposed." *Borrell,* 167 Wis. 2d at 782 (citing *Harris,* 119 Wis. 2d at 622–23). "Appellate judges should not substitute their preference for a sentence merely because, had they been in the trial judge's position, they would have meted out a different sentence." *McCleary,* 49 Wis. 2d at 281.

¶ 19. Furthermore, "[a] trial judge clearly has discretion in determining the length of a sentence within the permissible range set by statute." *Hanson v. State,* 48 Wis. 2d 203, 207, 179 N.W.2d 909 (1970). "An abuse of this discretion will be found only where the sentence is so excessive and unusual and so disproportionate to the offense committed as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances." *Ocanas v. State,* 70 Wis. 2d 179, 185, 233 N.W.2d 457 (1975) (citing *Mallon v. State,* 49 Wis. 2d 185, 181 N.W.2d 364 (1970); *Buckner v. State,* 56 Wis. 2d 539, 202 N.W.2d 406 (1972); *McCleary,* 49 Wis. 2d 263).

III

¶ 20. Taylor challenges his sentence on two interrelated grounds. First, he argues that although the circuit court gave reasons for its sentence, it did not explain why 12 years of initial confinement was necessary to fulfill the goals of the sentence. In other words, Taylor contends the circuit court failed to adequately explain why it deviated from the sentence recommended in the PSI or how it reached the length of sentencing that it ultimately settled on. Second, Taylor argues that his sentence is excessive on its face when

45

viewed in context of the three primary factors a court must consider at sentencing as articulated in *McCleary,* 49 Wis. 2d at 276. " 'The sentence imposed in each case should call for the minimum amount of custody or confinement which is consistent with the protection of the public, the gravity of the offense and the rehabilitative needs of the defendant.' " *Id.* (quoting *Standards Relating to Sentencing Alternatives and Procedures,* American Bar Association Project on Minimum Standards for Criminal Justice, Approved Draft, 1968, § 2.2, at 14). *See also State v. Spears,* 227 Wis. 2d 495, 507, 596 N.W.2d 375 (1999); *State v. Carter,* 208 Wis. 2d 142, 156, 560 N.W.2d 256 (1997); *State v. Echols,* 175 Wis. 2d 653, 682, 499 N.W.2d 631 (1993).[10]

A.

■

¶ 21. We begin with the statements made by the circuit court at Taylor's sentencing hearing and in its postconviction order to determine if the record reflects

[10] Beyond these three primary factors, the sentencing court, within its discretion, may also consider the following factors:

"(1) Past record of criminal offenses; (2) history of undesirable behavioral pattern; (3) the defendant's personality, character and social traits; (4) result of presentence investigation; (5) vicious or aggravated nature of the crime; (6) degree of the defendant's culpability; (7) defendant's demeanor at trial; (8) defendant's age, educational background and employment record; (9) defendant's remorse, repentance and cooperativeness; (10) defendant's need for close rehabilitative control; (11) the rights of the public; and (12) the length of pretrial detention."

*State v. Harris,* 119 Wis. 2d 612, 623–24, 350 N.W.2d 633 (1984) (quoting *Harris v. State,* 75 Wis. 2d 513, 519–20, 250 N.W.2d 7 (1977).

that the court exercised its discretion on a "rational and explainable basis." *McCleary*, 49 Wis. 2d at 276. As stated by the *McCleary* court:

> [W]e are obliged to search the record to determine whether in the exercise of proper discretion the sentence imposed can be sustained. It is not only our duty not to interfere with the discretion of the trial judge, but it is, in addition, our duty to affirm the sentence on appeal if from the facts of record it is sustainable as a proper discretionary act.

*Id.* at 282. From our examination of the facts on record, and the court's articulated reasoning in the sentencing transcript and the postconviction order, we are satisfied that the circuit court properly exercised its sentencing discretion and the sentence imposed was the product of an appropriate process of reasoning.

¶ 22. The court first noted that the information contained in the PSI weighed heavily on its mind: "What drives my decision in this case . . . is the information I've received on not only this presentence, but also the presentence that was attached to it that Judge Mueller used in her sentence." These PSIs fully detailed the "illegal criminal sexual activity with at least three victims." In the court's view and the PSI writer's view, these repeated violations occurred because Taylor believed he had "some type of insular shelter [] concerning the laws under which he's been convicted." The court further explained: "Mr. Cacciotti [the PSI writer] just nailed it when he said, when I read it, he doesn't realize the havoc he has created in the lives of three young women, three children, no father, no responsibilities, and he's out there essentially saying give me another pass."

¶ 23. The court was cognizant that the sexual acts Taylor was involved in were physically nonviolent, but in the court's view:

To embrace the argument that these are consensual sexual acts just simply does not recognize not only our law, but also my belief that there are people in our society that need protection. They need protection because they cannot simply, for reasons that the legislature believes in, and as adopted, consent to do certain things.

¶ 24. Indeed, the court listed the facts involved in this case which suggested (1) Taylor did not show any concern for the laws applicable to him or any desire to change his behavior while on probation or after a 60–day period of incarceration; and (2) although the sexual intercourse was non-forced, it does not follow that it was "consensual."

Mr. Taylor, what is particularly of concern to me is how this case came about. You're on supervision from Judge Mueller. You're, in fact, in a transitional living center; that's when the initial meetings took place. And after contacts are made, you and a friend take the young women not anyplace locally, not that that makes much difference where they were taken, but you go to Green Bay. There's liquor involved, young women admit they drank liquor. And what happens is you're saying: I thought they were—or, I thought the victim I'm involved with was 18. The same law that protects this victim is a law that requires you as an adult in this situation to make inquiry.

. . . .

This man goes out with a 15–year old when he's on supervision and his excuse is it was consensual, or his excuse is I didn't know she was 15. These facts are incredulous with his record.

. . . .

THE DEFENDANT: Man, I've got five years to think about this. ·

48

THE COURT: You're going to have more time to think about it, Mr. Taylor, because you should have thought about that when Judge Mueller told you probably about the same thing on the second—on the first go around. You have done nothing to alter your criminal behavior and approach to these young women, absolutely nothing.

¶ 25. The sentencing transcript also reveals that the court was concerned about protecting the public from Taylor's "unmitigated sexually abusive behavior towards underage women[.]" The court stated:

This isn't the way it goes, Mr. Taylor. You are responsible right from the get-go. If you think I'm going to turn you lose [sic] on society with your attitude, you are sorely mistaken.

. . . .

It's not going to happen on my watch, Mr. Taylor. I want you out of this community. I want you to understand this type of crime, as I've indicated, is one of the most serious short of homicide, batteries or something where you beat somebody up. Then to waltz in here today and try to convince me that this was all consensual is beyond belief. I view this as a crime where confinement is necessary to protect the public. Our law tries to protect these young women. It has forever.

. . . .

Court's findings and belief, as I indicated, confinement is necessary to protect our society and public from further criminal activity. It would unduly depreciate the seriousness of this offense if any sentence of probation were imposed.

. . . .

I'm sure you're remorseful, but I'm sure your remorse will be short-lived if I put you on the street and this situation presents itself again.

49

¶ 26. The comments of the court in its decision concerning Taylor's postconviction motion further convince us that the circuit court did not erroneously exercise its discretion. The court clarified that it had misstated, not misunderstood, the recommendations of the PSI, when it stated on the record at the sentencing hearing that the DOC was recommending 18 and one-half years, as opposed to the 12 years actually recommended. Additionally, the court concluded that its sentence was not unduly harsh given the circumstances and facts of the case. The decision reads in pertinent part as follows:

> The Court's sentencing rationale began on page 13 of the sentencing transcript and concludes at page 20. This decision will not reiterate the Court's conclusions but rather incorporate those conclusions as this Court continues to believe that Taylor is an absolute and legitimate threat to the community by his failure to comply with Wisconsin's law prohibiting sexual assault. The Court's observation that Taylor committed the sexual assault which is the subject of the charges in this case occurred while he was on supervision for similar charges and the Court's observation that Taylor has and continues to believe that sexual assault is appropriate regardless of the age of the victim becomes clear upon reading the sentencing transcript and Taylor's colloquy with the Court during the sentencing.
>
> Taylor's professed concern about his children is not supported by the facts. The presentence clearly establishes that Taylor's prior criminal acts and past failure to support his children notwithstanding his claim that his children now need him. He fails to pay support and he fails to develop real relationships with his children but for and at his convenience.
>
> The Court concludes it did misspeak when it stated the recommendations of the Department of Corrections

50

but also concludes that the misstatement was immaterial to the Court's conclusions and ultimate sentence.

The Court is mindful that Taylor will be incarcerated for a significant time; however, the incarceration in the instant case is reflective of Taylor's absolute violation of the law; a violation while on probation for charges of an identical nature. Taylor fails to conform to the law, fails to conform and obey the rules of supervision, and repeatedly has placed multiple victims at risk because of his behavior.

The Court concludes that, notwithstanding its statement, it has imposed an appropriate and necessary sentence upon Taylor and denies Taylor's application to be resentenced.

¶ 27. All told, the record before us demonstrates that the circuit court exercised individualized discretion on behalf of the sentence chosen for Taylor. That is, the court fixed a sentence that took into account the following: (1) Taylor's history of sexual assault; (2) his failure to recognize or accept the serious criminal nature of his conduct; (3) the read-in charges concerning the criminal damage to property and resisting or obstructing an officer; (4) the court's belief that unless Taylor was made to serve a substantial term of confinement, the public would not be protected from his ongoing criminal conduct; and (5) the court's belief that a long term of initial confinement was necessary to rehabilitate Taylor, as both probation and 60 days of confinement had not adequately impressed upon Taylor the seriousness of his conduct.

¶ 28. In terms of the length of his sentence, Taylor argues that there appeared to be no "starting point" for the court of some very low period of confinement, or even the period of confinement recommended

by the PSI writer. We cannot agree. At the sentencing hearing, the court clearly began its assessment of the appropriate sentence for Taylor with the PSI and the information and recommendations contained therein: "What drives my decision in this case . . . is the information I've received on not only this presentence, but also the presentence that was attached to it that Judge Mueller used in her sentence."

¶ 29. As stated by this court, "[t]he [PSI] is designed to assist the sentencing court in determining the appropriate sentence for that defendant and the public. Rational and consistent sentencing decisions cannot be achieved without a reliable information base. The [PSI] is supposed to provide the sentencing court with that information base." *State v. Crowell,* 149 Wis. 2d 859, 868, 440 N.W.2d 352 (1989) (citations omitted). We believe it is clear from the sentencing transcript that the circuit court properly used the PSI as its information base or starting point for the appropriate sentence to impose.

¶ 30. Granted, the circuit court did not explicitly state why, in its discretion, it added six more years of initial confinement onto the PSI recommendation. However, *McCleary* does not require a sentencing court to provide an explanation for the precise number of years chosen. *McCleary* mandates that the court's sentencing discretion be exercised on a "rational and explainable basis[,]" and such discretion "must depend on facts that are of record or that are reasonably derived by inference from the record and a conclusion based on a logical rationale founded upon proper legal standards." *McCleary,* 49 Wis. 2d at 276–77. Again, we believe the court properly exercised its discretion and provided a rational and explainable basis on the record for why it began with the recommendation posed in the

PSI and why, in the court's view, a longer initial incarceration period was necessary to promote its sentencing objectives. In other words, the trial court reasoned that based on Taylor's repeated sexual assaults and his failure to amend his behavior in light of previous probation and incarceration, a longer sentence, but well-within the general range of the PSI recommendation and the limits of the maximum sentence, was necessary to best protect the public and rehabilitate the defendant. Given our " 'strong policy against interference with the discretion of the trial court in passing sentence[,]' " *McCleary,* 49 Wis. 2d at 276 (quoting *State v. Tuttle,* 21 Wis. 2d 147, 150, 124 N.W.2d 9 (1963)), we cannot say, as a matter of law, that the circuit court erroneously exercised its discretion.

B.

¶ 31. Taylor also argues that the length of his sentence is excessive when considered in light of the nature of the offense, the character of the offender, and the protection of the public. We disagree and conclude that Taylor's term of initial confinement was fully justified by the facts and circumstances of this case, and was not "so excessive and unusual and so disproportionate to the offense committed as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances." *Ocanas,* 70 Wis. 2d at 185; *accord State v. Setagord,* 211 Wis. 2d 397, 416 n.9, 565 N.W.2d 506 (1997); *State v. Sarabia,* 118 Wis. 2d 655, 673, 348 N.W.2d 527 (1984); *Murphy v. State,* 75 Wis. 2d 522, 531, 249 N.W.2d 779 (1977); *State v. Killory,* 73 Wis. 2d 400, 408, 243 N.W.2d 475 (1976); *State v. Schreiber,* 2002 WI App 75, ¶ 7, 251 Wis. 2d 690, 642 N.W.2d 621.

¶ 32. First, Taylor contends that his term of confinement is excessive in light of the following circumstances surrounding the nature of the offense: (1) S.R. was three months shy of her sixteenth birthday, and if the two had intercourse when S.R. was sixteen, he would have been guilty of a misdemeanor and not a felony; (2) S.R. did not view herself as a victim; (3) although his conduct was unlawful, it was not unusual, as teenagers engage in sexual intercourse all the time; (4) the age difference between himself and S.R. was a little over three years; and (5) many sexual assault cases involving the same conduct are not prosecuted.

¶ 33. Second, Taylor argues his sentence is excessive when considering his character: (1) Taylor was an immature high school student when he committed the second charged sexual assault; (2) his sexual assaults were nonviolent; and (3) the Sex Offender Assessment that had been prepared while he was initially incarcerated did not recommend sex offender treatment during Taylor's confinement.

¶ 34. Finally, Taylor asserts the sentence imposed by the circuit court is excessive when considering the need to protect the public. That is, the sentence was not limited to the least amount of confinement necessary to protect the public.

¶ 35. Although we recognize the accuracy of many of Taylor's assertions, we are not persuaded that in light of all the facts and circumstances of this case, the circuit court erroneously exercised its discretion under the formidable *Ocanas* standard.

¶ 36. Admittedly, statutory rape cases are highly charged and "do not lend themselves to a simplistic application of the law." *See* Sandy Nowack, *A Community Prosecution Approach to Statutory Rape: Wisconsin's Pilot Policy Project,* 50 DePaul L. Rev. 865, 867 (2001).

"These cases become magnifying glasses, exposing with particular clarity any lack of harmony that exists in a community's cultural values, beliefs about parenting and teens, and attitudes about female sexuality." *Id.; see also* Gary W. Harper, *Contextual Factors that Perpetuate Statutory Rape: The Influence of Gender Roles, Sexual Socialization and Sociocultural Factors,* 50 DePaul L. Rev. 897 (2001) ("Childhood and adolescent sexuality are complex phenomena that are impacted by a host of cultural, developmental, environmental, and familial factors."). This is especially true in sexual assault cases where the age difference between the defendant and the victim is not great.

> Unsurprisingly, people react to the notion of statutory rape with some skepticism and ambivalence. After all, statutory rape laws ostensibly render the act of "consensual" sexual contact a crime. It seems that many people hear statutory rape and roll their eyes, thinking about the futility of trying to regulate the hormonal urgings of those caught in the throes of puberty. Virtually no one endorses statutory rape laws without some hesitation or qualification. At the same time, however, virtually no one recommends abolishing the crime of statutory rape outright. In spite of the rosy recollections, it seems obvious that young people are vulnerable to abuse and exploitation in their sexual encounters, and that the law must play some role in regulating and protecting against that abuse.

Michelle Oberman, *Girls in the Master's House: Of Protection, Patriarchy and the Potential for Using the Master's Tools to Reconfigure Statutory Rape Law,* 50 DePaul L. Rev. 799, 799–800 (2001) [hereinafter Oberman I]. Exactly what role the law should play in dealing with the sexual encounters of young people is certainly a matter open to debate. This debate is important, but

it should remain in the public arena and with thelegislative branch. Until the people of this state determine otherwise, Taylor's actions were criminal, and under the facts and circumstances of this case, the circuit court was well within its discretion in imposing the stiff sentence it did.

¶ 37. Furthermore, it is no secret that many teenagers are sexually active in today's society.[11] We also do not disagree with the assertion that many state prosecutors have adopted a lenient attitude towards enforcing statutory rape laws. *See* Nowack, *supra,* at 873–74 ("In reality, non-coerced sexual contact between two adolescents is not typically charged without some aggravating factor.").

¶ 38. Despite these realities, the circuit court did not view Taylor's sexual assault of S.R. as an act of consensual sexual experimentation between two teenagers with "the hormonal urgings of those caught in the throes of puberty." Oberman I, *supra,* at 800. In the court's view, Taylor's crime was consistent with a pattern of sexual assaults that inflicted significant harm on three young women, three children, and society as a whole. Indeed, the PSI belies Taylor's claim that S.R. did not view herself as a victim, as she stated the following: "I think he should be punished. I believe he will continue to do this. . . . He told me that I was to blame for getting him in trouble. He told me that he would go to jail because of this. I believe he should be placed in prison for what he has done." Under the totality of the facts and

_____

[11] Although the reported numbers vary, one source indicates that over 50 percent of adolescents are sexually active. Michelle Oberman, *Girls in the Master's House: Of Protection, Patriarchy and the Potential for Using the Master's Tools to Reconfigure Statutory Rape Law,* 50 DePaul L. Rev. 799, 809 (2001).

circumstances of this case, we cannot disagree with the court's assessment of the seriousness of Taylor's repeated offenses.

¶ 39. As detailed in the PSI, Taylor was charged, convicted, and subsequently placed on a reasonable period of probation for similar behavior once before. Taylor, however, refused to alter his conduct in any meaningful manner during this probationary period. While on probation, Taylor impregnated a seventeen-year-old girl despite the court's order that he refrain from engaging in sexual intercourse with anyone under the age of eighteen. Taylor also violated other conditions set by the court by failing to: (1) attend Adult Basic Education Programming and maintain verifiable employment; (2) abide by the rules of his Transitional Living Placement and follow the procedures of the Electronic Monitoring Program;[12] and (3) attend an Intensive Outpatient Programming for Alcohol Drug Abuse orientation appointment. It was during this run of probation violations that Taylor first had sexual contact with the victim of the present action. Taylor eventually stopped reporting to his probation officer and was in absconder status for at least eight months until he was taken into custody for the charges that brought about this action. While he was gone from supervision, Taylor reported that he used drugs and consumed alcohol. He also battered the seventeen-year-old subject of his earlier probation violation, B.K. She informed the PSI writer that an angry and drunk Taylor arrived at her house and proceeded to damage

---

[12] This violation arose during Taylor's first encounter with S.R. at Smith's transitional living apartment, when a site check monitor stopped by and noted two 40–ounce bottles of beer in Smith's apartment.

her car and beat her up.[13] All told, the record is replete with examples of the serial nature of Taylor's conduct, and his utter lack of rehabilitation, all of which demonstrate that Taylor's sentence was not so excessive as to shock public sentiment.

¶ 40. The serial nature of Taylor's conduct clearly demonstrated to the circuit court he was not a naïve high school student caught up in innocent sexual experimentation. Taylor's behavior is alarmingly repetitive and his own statement in the PSI report demonstrates he has not taken anything to heart. As the circuit court recognized, it is incredible that after being convicted once for the same offense, and after spending time in prison for having sex with a seventeen-year-old, Taylor explained: "I really didn't think about [S.R.'s age]. I thought she was eighteen." Furthermore, Taylor's belligerent display at the sentencing hearing further demonstrated to the court his utter lack of judgment and concern for the seriousness of his actions.

¶ 41. The circuit court was also unimpressed by the fact that Taylor's sexual assaults were "non-forced" because Wisconsin's statutory scheme makes it clear that a child lacks the legal capacity to consent to sexual intercourse, just as children lack the ability to form contracts or buy liquor. This contention is not without reason. "Investigators studying adolescent sexuality have identified a multiplicity of factors beyond sexual desire and love that lead teenagers to consent to sex. Among these are fear, confusion, coercion, peer pressure, and a desire for male attention." Michelle Oberman, *Regulating Consensual Sex with Minors: Defining*

---

[13] She further reported that Taylor brought her around $400 during the four months after he learned she was pregnant, but after they broke up, she has received nothing.

*a Role for Statutory Rape,* 48 Buff. L. Rev. 703, 709 (2000); *see also* Oberman I, *supra,* at 813 (It is "clearly true that there is considerable opportunity for coercion in sexual encounters between peers. As the *Michael M.* case[14] powerfully demonstrates, this coercion may be so commonplace, and so deeply scripted into contemporary norms of sexual interaction, that it is all but invisible."). In other words, there can be an imbalance of power in the sexual encounters between young teenage girls and young adult men. It is apparent that the facts of this case persuaded the circuit court that such an imbalance of power likely occurred here as S.R. was taken to Green Bay without knowing where she was going, was served alcohol before engaging in sexual intercourse with Taylor, and, according to S.R., Taylor apparently tried to persuade her not to cooperate with the prosecution.

¶ 42. These facts also led the circuit court to reasonably conclude that Taylor would continue his course of detrimental sexual behavior unless he was incarcerated for a lengthy period of time. As the PSI amply demonstrated, Taylor was not rehabilitated or deterred by his prior criminal conviction, his term of probation, or his initial period of incarceration. He was simply unwilling to conform his conduct to the law, and there was nothing that led the court to believe that his behavior would change in the future. Indeed, the court concluded that Taylor had made the determination that the laws of the State of Wisconsin do not apply to him. In the court's view, an extended period of incarceration was necessary to protect young girls from Taylor's sexual behavior and his disregard for the rule of law.

---

[14] *Michael M. v. Superior Court of Sonoma County,* 450 U.S. 464 (1981).

¶ 43. We believe the court clearly considered the nature of the offense, the character of the defendant, and the protection of the public. Taylor recognizes the court's legitimate concern about protecting the public, but he essentially contends the court relied too heavily on this factor and gave too little weight to the other primary factors and the specific considerations described above. We do not dispute the relative weight given by the trial court to its concerns about the safety of the public. As we have recognized, however, "[g]iving consideration to various relevant factors does involve a weighing and balancing operation, but the weight to be given a particular factor in a particular case is for the trial court, not this court, to determine." *Cunningham v. State,* 76 Wis. 2d 277, 282, 251 N.W.2d 65 (1977); *accord Schreiber,* 251 Wis. 2d 690, ¶ 8. Furthermore, "a sentence can be imposed which considers all relevant factors but which is based primarily on the gravity of the crime or the need to protect society." *Cunningham,* 76 Wis. 2d at 283.

¶ 44. As such, in light of all the facts and circumstances before the circuit court at sentencing, we find no basis for holding that, as a matter of law, the sentence imposed is excessive, as it is not so unusual, or disproportionate as to shock public sentiment.

IV

¶ 45. In sum, Taylor's sentence, while certainly strict, is not excessive. "Indeed, the fact that this court might have reacted differently under the facts and circumstances of a particular case is, itself, insufficient to warrant a determination that the trial court abused

its discretion[, given our] strong policy against interference with the discretion of the trial court." *Ocanas,* 70 Wis. 2d at 188 (citing *Tuttle,* 21 Wis. 2d 147; *Voigt v. State,* 61 Wis. 2d 17, 211 N.W.2d 445 (1973)).

¶ 46. We conclude that under our well-established standards for reviewing the circuit court's exercise of its sentencing discretion, and in light of the individual facts and circumstances of this case, the circuit court exercised proper discretion in its sentence and in its refusal to modify that sentence. Accordingly, we affirm the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 47. ANN WALSH BRADLEY, J. (*concurring*). I join the opinion of the majority. As the author of *State v. Gallion,* 2004 WI 42, 270 Wis. 2d 535, 678 N.W.2d 197, I write separately to highlight that the case before the court today is a pre-*Gallion* case. Additionally, I write to emphasize certain components of the basic sentencing framework set forth in *Gallion.*

¶ 48. The majority correctly notes "because Taylor was sentenced a little less than a year before we released *Gallion,* its holding does not apply to this case." Majority op., ¶ 17, n.9. Instead, the majority appropriately employs pre-*Gallion* cases in its analysis.

¶ 49. Of course, many of the pre-*Gallion* cases cited by the majority form the framework of the *Gallion* analysis. In *Gallion,* we reexamined the process of reasoning which demonstrates the proper exercise of sentencing discretion and noted that appellate courts are required to "more closely scrutinize the record to ensure that 'discretion was in fact exercised . . . .'" *Gallion,* 270 Wis. 2d 535, ¶ 4 (quoting *State v. McCleary,* 49 Wis. 2d 263, 277, 182 N.W.2d 512 (1971)). We

determined that the exercise of sentencing discretion "must be set forth on the record." *Gallion,* 270 Wis. 2d 535, ¶ 8.

¶ 50. In the wake of truth-in-sentencing legislation, we perceived a difference between the sentencing landscape prior to *Gallion* and that which existed at the time that *Gallion* was decided. *See id.,* ¶ 28. Under the old, indeterminate sentencing system, all three branches of government played a role in establishing the sentence served.[1] *Id.* Now, the executive branch role has been diminished with the abolition of the parole board. *Id.,* ¶¶ 28, 33. The role of the legislative branch is limited to setting the parameters of the penalty. *Id.,* ¶ 28. Thus, the responsibility of the judicial branch, in ensuring fair sentences, has significantly increased. *Id.*

¶ 51. Previously, judges were thought to have inadequate information to determine the actual date on which a prisoner should be released. *Id.,* ¶ 32. Instead, the prison officials and the parole board who had sustained contact with the prisoner were thought to be in a better position to determine if the rehabilitation efforts were successful and when the prisoner could be safely released. *Id.* Now, in large part, the release date is determined up front, at the time of sentencing. *Id.,* ¶ 34.[2]

¶ 52. In light of these changes, we reaffirmed in *Gallion* the sentencing standards set forth in *McCleary* and reexamined the manner in which those standards

[1] "The legislature set the maximum penalty and the manner of its enforcement; the courts imposed an indeterminate term; and the executive branch, through the parole board, determined how much of that term was going to be served." *State v. Gallion,* 2004 WI 42, ¶ 28, 270 Wis. 2d 535, 678 N.W.2d 197.

[2] Early release options are restricted. *See, e.g.,* Wis. Stat. § 973.195 (2003–04).

were to be applied. We noted a "regrettable disconnect" between the *McCleary* principles as-stated and those principles as-applied. *Id.,* ¶ 26. Ultimately we concluded that "[w]hat has previously been satisfied with implied rationale must now be set forth on the record." *Id.,* ¶ 38.

¶ 53. In reaffirming the *McCleary* standards and reexamining the manner in which those standards were to be applied, we set forth the basic framework for sentencing and emphasized the need for the court to set forth its rationale on the record. I highlight here certain components of that discussion:

- Courts must specify the objectives of the sentence. *Id.,* ¶ 41.

- Courts are to describe the facts and sentencing factors relevant to those objectives, and explain why the sentence imposed advances the specified objectives. *Id.,* ¶ 42.

- In each case, the sentence imposed shall " 'call for the minimum amount of custody or confinement which is consistent with the protection of the public, the gravity of the offense and the rehabilitative needs of the defendant.' " *Id.,* ¶ 44 (quoting *McCleary,* 49 Wis. 2d at 276).

- Courts are to consider probation as the first alternative. Probation should be the disposition unless:confinement is necessary to protect the public, the offender needs correctional treatment available only in confinement, or it would unduly depreciate the seriousness of the offense. *Gallion,* 270 Wis. 2d 535, ¶ 44.

¶ 54. The requirement of an on-the-record explanation will serve to fulfill the *McCleary* directive that discretion be exercised on a "rational and explainable

63

basis." *Id.*, ¶ 39 (quoting *McCleary*, 49 Wis. 2d at 276). Merely uttering the facts involved, invoking sentencing factors, and pronouncing a sentence is not a sufficient demonstration of the proper exercise of discretion. Quoting *McCleary*, the *Gallion* court recounted that: "Discretion is not synonymous with decision-making. Rather, the term contemplates a process of reasoning." *Id.*, ¶ 3 (quoting *McCleary*, 49 Wis. 2d at 277). Courts must reference the relevant facts and factors, and explain on the record the linkage between the sentence given and the sentencing objectives.

¶ 55. The *McCleary* court aptly described the importance of the on-the-record explanation. Thus, I end where the *Gallion* court began:

> In all Anglo-American jurisprudence a principal obligation of the judge is to explain the reasons for his actions. His decisions will not be understood by the people and cannot be reviewed by the appellate courts unless the reasons for decisions can be examined. It is thus apparent that requisite to a prima facie valid sentence is a statement by the trial judge detailing his reasons for selecting the particular sentence imposed.

*Gallion,* 270 Wis. 2d 535, ¶ 1 (quoting *McCleary,* 49 Wis. 2d at 280–81).