COURT OF APPEALS
DECISION
DATED AND FILED

August 19, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP757-CR**

Cir. Ct. No. **2016CF290**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

SHERRI L. BLACKSHEAR,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Kenosha County:  BRUCE E. SCHROEDER, Judge.  *Affirmed*.

Before Neubauer, C.J., Gundrum and Davis, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Sherri Blackshear appeals from a judgment convicting her on her guilty plea to delivery of heroin (< 3 grams) as a second or subsequent offense and as a repeat offender resulting from a purchase involving a confidential informant (CI) working with the Kenosha Drug Operation Group. A second similar count was dismissed and read in. Postconviction, Blackshear sought to withdraw her guilty plea based on defense counsel's alleged ineffectiveness for not advising her that she might have pursued an entrapment defense and for not more diligently seeking discoverable telephone records between her and the CI. She also moved for sentence modification for having been deemed ineligible for the Earned Release Program (ERP) and appeals from the order denying those motions. We affirm.

¶2 Blackshear sold and delivered heroin to the CI, who was outfitted with an electronic video recording device. The transactions were preceded by phone calls between the CI and Blackshear. Blackshear later submitted an affidavit in which she claimed the CI entrapped her into buying heroin, that she never before had used, purchased, or sold heroin, and that she did so just this once as she was "out of balance" due to a relapse from her crack cocaine addiction. She explained that she agreed to get heroin for the CI only because if she, the CI, and her roommate, Paul, who also wanted drugs, pooled their money, she could get crack cocaine at "the lowest possible price."

¶3 At the sentencing hearing, Blackshear argued that she was but a go-between and thus deserved minimal confinement with a focus on rehabilitation. The State pointed out that Blackshear's criminal history included other drug offenses, theft, and battery. The court imposed six years' initial confinement and five years' extended supervision, consecutive to her previous sentences, emphasizing that it felt it necessary to deter her and others' participation in a

heroin epidemic that wreaks havoc on individuals and communities. The court also concluded that it did not think that ERP was appropriate in light of her repeater status.

¶4 Postconviction, Blackshear moved for sentence modification because the trial court found her ineligible for the ERP and because defense counsel, Attorney Rocco DeFilippis, failed to investigate and inform her of an entrapment defense and she would have gone to trial had she known of it. She also moved for discovery of potentially exculpatory audio recordings of telephone calls between her and the CI that preceded the drug transactions that she contended the State failed to disclose in response to DeFilippis' pretrial discovery demand.

¶5 The court conducted a **_Machner_**[1] hearing, where it was established that the surveillance video of the drug transactions did not support an entrapment defense. DeFilippis testified "that its contents were not helpful to [Blackshear's] case and that her options for trial were not good." He further testified that he told Blackshear the CI's video would not be helpful to her case; that he did not recall her ever saying she initially rebuffed the CI's attempts to solicit heroin from her but that her "willpower was overcome" by the CI's persistence; that Blackshear never informed him about a phone call in which she "resisted [the CI's] effort to get her involved in heroin delivery"; or that he heard audiotapes of any pre-buy phone calls that Blackshear claimed would aid an entrapment defense. The court denied the motions.

---

[1] **_State v. Machner_**, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

¶6     On appeal, Blackshear first claims her guilty plea was not entered knowingly, intelligently, or voluntarily because of faulty legal advice, as she was not told she could have mounted an entrapment defense. "A defendant is entitled to withdraw a guilty plea after sentencing only upon a showing of 'manifest injustice' by clear and convincing evidence." *State v. Bentley*, 201 Wis. 2d 303, 311-12, 548 N.W.2d 50 (1996) (citation omitted). One way is to show ineffective assistance of counsel. *State v. Dillard*, 2014 WI 123, ¶84, 358 Wis. 2d 543, 859 N.W.2d 44.

¶7     "Whether a plea is knowing, intelligent, and voluntary is a question of constitutional fact." *State v. Brown*, 2006 WI 100, ¶19, 293 Wis. 2d 594, 716 N.W.2d 906. An appellate court "accept[s] the circuit court's findings of historical and evidentiary facts unless they are clearly erroneous but … determine[s] independently whether those facts demonstrate that the defendant's plea was knowing, intelligent, and voluntary." *Id.* "[A] factual finding is not clearly erroneous merely because a different fact-finder could draw different inferences from the record." *State v. Wenk*, 2001 WI App 268, ¶8, 248 Wis. 2d 714, 637 N.W.2d 417.

¶8     Blackshear asserts that she was not inclined to deliver heroin and the CI took advantage of her drug relapse. She claims she agreed to deliver heroin only to "obtain … crack cocaine at the lowest possible price."

¶9     Entrapment exists only "where the police have instigated, induced, lured or incited the commission of the crime" to such a degree as to "remove the element of volition from the conduct of the defendant." *State v. Amundson*, 69 Wis. 2d 554, 565, 230 N.W.2d 775 (1975). Merely seeking or offering to buy drugs is not the kind of inducement that establishes entrapment. *Hawthorne v.*

4

*State*, 43 Wis. 2d 82, 90, 168 N.W.2d 85 (1969). To establish an entrapment defense, the defendant first must show by the greater weight of the credible evidence that law enforcement improperly induced him or her to commit the offense. *State v. Hilleshiem*, 172 Wis. 2d 1, 8-10, 492 N.W.2d 381 (Ct. App. 1992). If improper inducement is shown, the burden then shifts to the State to prove that the defendant was not entrapped because he or she was predisposed to commit the crime. *Id.*

¶10    Blackshear contends the State preyed upon her being "out of balance" due to her history of an addiction to crack cocaine. The fact that she was motivated to purchase the heroin to gain a beneficial price on her crack cocaine does not reduce her willingness to commit the offense, however.

¶11    "[T]he law permits law enforcement officers to engage in some inducement, encouragement, or solicitation in order to detect criminals." *Id.* at 9. "The fact that a government agent furnishes the accused with an opportunity to commit the crime does not by itself constitute entrapment." *Id.* "In the context of narcotics transactions, merely seeking or offering to buy drugs is not the kind of inducement [that] establishes entrapment." *Id.* "Simply cultivating a friendship with a person," *State v. Bjerkaas*, 163 Wis. 2d 949, 956, 472 N.W.2d 615 (Ct. App. 1991), and then asking him or her to procure narcotics, does not constitute improper inducement. *Hilleshiem*, 172 Wis. 2d at 12-13.

¶12    DeFilippis testified that Blackshear never told him anything that would support an entrapment defense. Although she told him of her disdain for heroin, she never stated that her "willpower was overcome" by the CI's requests that she purchase heroin, and DeFilippis had no recollection of her informing him of a telephone call in which she supposedly resisted the CI's request to procure

5

heroin. Although Blackshear asserts that DeFilippis ineffectively failed to pursue, obtain and review cell phone records between her and the CI corroborating the entrapment defense, DeFilippis testified that he had no recollection that Blackshear informed him of any telephone calls in which she resisted the CI's request to procure heroin and she provided no evidence that those calls existed. When confronted with the fact that the police made a mirror image of her phone after her arrest and that no such phone calls were listed, Blackshear had no explanation for their absence. The trial court found DeFilippis' testimony to be "truthful and accurate."

¶13 And not only do the recorded calls not establish that the CI exerted any undue influence on Blackshear and contain no indication that she resisted the CI's efforts to procure heroin, the calls also demonstrate that Blackshear willingly participated in the drug transactions so she could "get some [crack cocaine] out of that." Blackshear admitted that these audio recordings contain no indication that she resisted the CI's requests to obtain heroin.

¶14 While Blackshear contends that the trial court should have accepted her testimony at face value, it found that in both her affidavit and courtroom testimony, Blackshear was "willfully deceitful," in part because she altered the transcript. This finding is not clearly erroneous, as there is no evidence of any phone calls between Blackshear and the CI where she resisted the CI's request to procure heroin. DeFilippis thus cannot have been ineffective for failing to obtain them.

¶15 Blackshear nonetheless claims she would have insisted on going to trial had she been made aware of an entrapment defense. Even if DeFilippis might have urged an entrapment defense, his failure to do so was not prejudicial to her.

As noted, the trial court found that Blackshear willfully made false representations regarding the recorded conversations between her and the CI. Regardless if a different fact finder could have drawn different inferences, we must accept the reasonable inferences supporting the trial court's decisions. *See State v. Wenk*, 2001 WI App 268, ¶8, 248 Wis. 2d 714, 637 N.W.2d 417.

¶16 Blackshear next seeks sentence modification, claiming that the trial court unreasonably denied her eligibility for the earned release program (ERP), despite that the DOC found her "suitable." We disagree.

¶17 "The standard of review of a motion for sentence modification is whether the sentencing court erroneously exercised its discretion." *State v. Schreiber*, 2002 WI App 75, ¶7, 251 Wis. 2d 690, 642 N.W.2d 621. "A discretionary decision will be affirmed if it is made based upon the facts of record and in reliance on the appropriate law." *State v. Owens*, 2006 WI App 75, ¶7, 291 Wis. 2d 229, 713 N.W.2d 187. When imposing a bifurcated sentence, "the court shall, as part of the exercise of its sentencing discretion, decide whether the person being sentenced is eligible or ineligible to participate in the earned release program …." WIS. STAT. § 973.01(3g) (2017-18).[2] "There is a strong public policy against interfering with the trial court's sentencing discretion and [a reviewing court] must assume that the sentencing decision was reasonable." *Schreiber*, 251 Wis. 2d 690, ¶7. This court will search the record to determine whether the imposed sentence can be sustained. *See State v. Odom*, 2006 WI App 145, ¶8, 294 Wis. 2d 844, 720 N.W.2d 695. Accordingly, "[a]n erroneous

---

[2] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

exercise of discretion will be found only if the sentence is excessive, unusual, and so disproportionate to the offense committed as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances." *Schreiber*, 251 Wis. 2d 690, ¶7.

¶18    "When making a sentencing determination, a court must consider the protection of the public, the gravity of the offense, and the rehabilitative needs of the defendant, as well as any appropriate mitigating or aggravating factors." *State v. Gayton*, 2016 WI 58, ¶22, 370 Wis. 2d 264, 882 N.W.2d 459. "The sentencing court … must be permitted to consider any and all information that reasonably might bear on the proper sentence for the particular defendant, given the crime committed." *State v. Guzman*, 166 Wis. 2d 577, 591, 480 N.W.2d 446 (1992) (citation omitted).

¶19    While a trial court must state whether the defendant is or is not eligible for ERP, it is not required to make "completely separate findings" as long as "the overall sentencing rationale also justifies" its eligibility determination. *Owens*, 291 Wis. 2d 229, ¶9. Here, the trial court more than adequately explained the factors underlying its sentencing decision, including the seriousness of the crime, Blackshear's extensive criminal history, her inability to follow through with treatment, and the need to protect the public. *See id.*, ¶10. It deemed Blackshear's participation in the heroin trade to be a significant offense and that the primary aim of her sentence was to deter her and others from participating in the heroin trade. It thus concluded that a "stern sentence" was appropriate, as early release would undermine the message of deterrence. The court rejected Blackshear's claim that she was a mere "middleman," instead characterizing her role as a participant in a "death dealing business."

¶20     The court's findings are not clearly erroneous and we see no erroneous exercise of sentencing discretion.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.