STATE of Wisconsin, Plaintiff-Respondent,

v.

Donald ODOM, Defendant-Appellant.

Court of Appeals

*Nos. 2005AP1840–CR, 2005AP1841–CR.*
*Submitted on briefs April 6, 2006.—Decided June 13, 2006.*

2006 WI App 145

(Also reported in 720 N.W.2d 695.)

844

 █

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Eileen Miller Carter.*

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Charlotte Gibson*, assistant attorney general and *Peggy A. Lautenschlager*, attorney general.

Before Wedemeyer, P.J., Curley and Kessler, JJ.

¶ 1. KESSLER, J. Donald Odom appeals from a judgment of conviction for burglary and from an order reconfining him to prison for a 2000 conviction for operating a vehicle without the owner's consent. He also appeals from an order denying his motion for postconviction relief. Odom argues that the trial court erroneously exercised its discretion when it sentenced him for the burglary and reconfined him for the revocation of his extended supervision.[1] He also contends that the trial court erred when it *sua sponte* vacated Odom's sentence credit for one-hundred-and-two days on the 2000 case. The State concedes that Odom is entitled to one-hundred-and-two days of credit on each sentence. Therefore, we reverse the order reducing Odom's sentence credit and remand with directions to issue an amended reconfinement order granting Odom one-hundred-and-two days of credit on the reconfine-

_____

[1] Odom also argues that the trial court erred when it did not grant his motion for resentencing, which was based on the same alleged sentencing errors. We will address all of Odom's challenges to his sentences at once, rather than examining the trial court's postconviction decision separately.

ment sentence. We reject all of Odom's other challenges, concluding that the trial court properly exercised its sentencing discretion, and affirm the judgment and orders in all other respects.

## BACKGROUND

¶ 2. In 2000, Odom was convicted of operating a vehicle without the owner's consent (the "2000 conviction") and was sentenced to four years of initial confinement and five years of extended supervision.[2] On May 4, 2004, he was released on extended supervision. According to the Department of Corrections ("Department"), from June 22, 2004, until he was arrested on November 4, 2004, Odom's whereabouts were unknown.

¶ 3. The Department sought to revoke Odom's extended supervision based on numerous violations, including not reporting to his parole agent, not reporting a change in his employment status, consuming cocaine and alcohol, being involved in three burglaries, and driving a vehicle without the owner's consent. Odom did not contest the revocation and he appeared before the trial court for sentencing after revocation. On the same day, Odom was also sentenced for the October 13, 2004 burglary of a store (the "2004 conviction"), a crime to which he pled guilty.

¶ 4. The trial court reconfined Odom for the entire time remaining on the 2000 conviction: four years, eleven months and nineteen days. On the 2004 conviction, the trial court imposed a sentence of seven-and-a half years of initial confinement and five years of

---

[2] Odom was also convicted of resisting or obstructing an officer. That sentence is not at issue in this appeal and will not be addressed.

extended supervision, to run concurrent with the 2000 conviction. The trial court found Odom eligible for the Earned Release Program.

¶ 5. Odom filed a motion for postconviction relief seeking resentencing on grounds that the trial court erroneously exercised its discretion when it imposed the sentences. The trial court denied the motion without a hearing. In its written order, the trial court found that it had not erroneously exercised its sentencing discretion. It also *sua sponte* found that excessive sentence credit had been awarded, reasoning that on the 2000 conviction Odom was entitled to sentence credit only from the date of his arrest through the date of revocation.

## DISCUSSION

¶ 6. Odom argues that his sentences in both cases[3] were too harsh and that the trial court failed to properly consider mitigating factors, rehabilitation, his level of culpability, the sentencing matrix and his substance abuse needs and progress. He also argues that the trial court failed to reference the original sentence or use the extended supervision revocation summary with respect to the 2000 conviction, and that the trial court erroneously vacated his sentence credit on the 2000 conviction.

### I. Legal standards

¶ 7. The standard of appellate review of sentencing decisions is well-settled. "The trial court has great

---

[3] Odom's arguments focus primarily on the 2004 conviction, but some of his arguments relate to the reconfinement on the 2000 conviction. Therefore, we will consider the trial court's exercise of discretion with respect to both convictions.

discretion in passing sentence." *State v. Wickstrom*, 118 Wis. 2d 339, 354, 348 N.W.2d 183 (Ct. App. 1984). This court will affirm a sentence imposed by the trial court if the facts of record indicate that the trial court "engaged in a process of reasoning based on legally relevant factors." *Id.* at 355. The primary factors for the sentencing court to consider are the gravity of the offense, the character of the offender, and the public's need for protection. *State v. Larsen*, 141 Wis. 2d 412, 427, 415 N.W.2d 535 (Ct. App. 1987). The weight given each of these factors lies within the trial court's discretion, and the court may base the sentence on any or all of them. *Wickstrom*, 118 Wis. 2d at 355. The court may also consider the following factors:

> "(1) Past record of criminal offenses; (2) history of undesirable behavior pattern; (3) the defendant's personality, character and social traits; (4) result of presentence investigation; (5) vicious or aggravated nature of the crime; (6) degree of the defendant's culpability; (7) defendant's demeanor at trial; (8) defendant's age, educational background and employment record; (9) defendant's remorse, repentance and cooperativeness; (10) defendant's need for close rehabilitative control; (11) the rights of the public; and (12) the length of pretrial detention."

*State v. Harris*, 119 Wis. 2d 612, 623–24, 350 N.W.2d 633 (1984) (citation omitted).

██

¶ 8. This court will sustain a trial court's exercise of discretion if the conclusion reached by the trial court was one a reasonable judge could reach, even if this court or another judge might have reached a different conclusion. *See Hartung v. Hartung*, 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981). This court is reluctant to interfere with the trial court's sentencing discretion given

the trial court's advantage in considering the relevant sentencing factors and the defendant's demeanor. *State v. Echols*, 175 Wis. 2d 653, 682, 499 N.W.2d 631 (1993). Even in instances where a sentencing judge fails to properly exercise discretion, this court will "search the record to determine whether in the exercise of proper discretion the sentence imposed can be sustained." *McCleary v. State*, 49 Wis. 2d 263, 282, 182 N.W.2d 512 (1971).

¶ 9. In *State v. Gallion*, 2004 WI 42, ¶ 8, 270 Wis. 2d 535, 678 N.W.2d 197, the supreme court reaffirmed the *McCleary* sentencing analysis, which cited the importance of the sentencing court's consideration of "the nature of the offense, the character of the offender, and the protection of the public interest." *McCleary*, 49 Wis. 2d at 274 (citation omitted). *McCleary* also emphasized the importance of the sentencing court's exercise of discretion.

> It is thus clear that sentencing is a discretionary judicial act and is reviewable by this court in the same manner that all discretionary acts are to be reviewed.

> In the first place, there must be evidence that discretion was in fact exercised. Discretion is not synonymous with decision-making. Rather, the term contemplates a process of reasoning. This process must depend on facts that are of record or that are reasonably derived by inference from the record and a conclusion based on a logical rationale founded upon proper legal standards.

*Id.* at 277.

¶ 10. *Gallion* requires the trial court to explain the "linkage" between the sentence and the sentencing objectives. 270 Wis. 2d 535, ¶ 46. Although *Gallion* did

not change the standard of review, "appellate courts are required to more closely scrutinize the record to ensure that 'discretion was in fact exercised and the basis of that exercise of discretion [is] set forth.'" *Id.*, ¶ 76 (quoting *McCleary*, 49 Wis. 2d at 277) (alteration by *Gallion*).

¶ 11. A reconfinement hearing after revocation is a sentencing. *State v. Brown*, 2006 WI App 44, ¶ 9, 289 Wis.2d 691, 712 N.W.2d 899. Like initial sentences, this sentencing is within the trial court's discretion, and on appeal we review the sentence to determine whether that discretion was erroneously exercised. *Id.*

¶ 12. In reviewing that exercise of discretion, we must bear in mind that "a reconfinement hearing is simply an extension of the original sentencing proceeding, and thus, the trial court need not address all relevant factors" in explaining its sentence. *Id.*, ¶ 17. *Brown* explained that "resentencing does not require an explicit delineation of the *McCleary* sentencing factors, as long as the court considered them earlier." *Brown*, 712 N.W.2d 899, ¶ 17. Thus, where the defendant did not contend that his initial sentencing hearing was deficient in any way, this court assumed that the trial court "touched on all the appropriate factors when deciding [the defendant's] original sentence" and considered only whether the trial court gave sufficient reasons for its reconfinement decision and whether its reasoning was sound. *Id.*, ¶¶ 17, 18.

## II. Sentencing

¶ 13. At the sentencing hearing on both the 2004 conviction and the revocation of extended supervision

853

for the 2000 conviction, the trial court first confirmed that neither the State nor Odom had changes to the reconfinement memorandum, and then heard argument from the State. The prosecutor explained that Odom admitted coming upon a store that had already been broken into and taking property from the store. The prosecutor noted that it was not clear from the evidence whether that was accurate, or whether Odom was involved in actually breaking into the store. The trial court asked several questions about the burglary, attempting to assess Odom's involvement.

¶ 14. The prosecutor also provided information on an uncharged crime that Odom had agreed could be read-in: the August 2004 burglary of a home. The prosecutor indicated that Odom's fingerprint was found in the home. He said that although Odom initially denied involvement, he ultimately admitted that crime.

¶ 15. Next, the prosecutor summarized Odom's extensive criminal history, which included over twelve convictions, which had begun at age thirty when Odom became addicted to drugs and had continued through Odom's current age of forty-four. Odom's criminal history showed a progression of confinement, from probation to forty days of jail time, to six-to-nine months of confinement, to four years of confinement in prison. The prosecutor recommended that Odom be sentenced to prison, and noted that he did not object to the sentence being concurrent with the reconfinement order.

¶ 16. Odom's trial counsel acknowledged that Odom had numerous contacts with the criminal justice system and that Odom "is addicted to crack-cocaine." However, she emphasized that Odom had also accomplished many positive things in his life, including a successful twenty-year marriage, being a father to two

children, post-high school education and lucrative employment. Trial counsel noted that Odom knows that his addiction is powerful, and that he will need to work hard to overcome his addiction. She also noted that Odom had accepted responsibility for his crimes.

¶ 17. Odom's trial counsel recommended that the trial court adopt the probation agent's recommendation and reconfine Odom for one year, five months and twenty-six days. She urged the trial court to sentence Odom to a concurrent burglary sentence.

¶ 18. Odom also addressed the trial court personally. He apologized for his crimes, and noted his optimism that he will be able to overcome his addiction to crack cocaine. He asked for a "second chance to carry out" his goals.

¶ 19. The trial court then stated that the reconfinement report noted some crimes that the prosecutor had not identified. The trial court also clarified with Odom that he had no juvenile record, and had not committed crimes until age thirty, when he became addicted to drugs. The trial court asked Odom what he had done to address his substance abuse problem. Odom candidly stated that at first, he tried to fight the addiction on his own, but had now recognized he may need therapy or other assistance.

¶ 20. The trial court then began to pronounce sentence. It commented that it did not believe it was necessary to resolve whether Odom had broken into the store himself, or whether he came upon it after others had broken in. The trial court stated: "Certainly, if [this] was a first occasion or even something close to it, I'd be more interested in whether you were the original burglar . . . who had that initiative and greater culpability."

¶ 21. The trial court commented on the crimes at issue: the burglary, and the second burglary that was read-in. Then the trial court discussed Odom's criminal history and character:

> You ask for a second chance, [and if] that phrase weren't so tragic [it] would be a joke.
>
> We are talking about the 12th, or 15th or 20th chance here, depending on what we count over this history, some 14 years of struggling with this, the revolving door started a long time ago.
>
> . . . .
>
> [A]s you note, you are the one who is responsible ultimately, you have to figure this out . . . you have to stop victimizing the public.
>
> And within a few months of being out, there were not one, but two crimes here, and you basically absconded.
>
> You were out of touch, you were not cooperating with the program at all and the risk of reoffense is extremely high here.
>
> . . . .
>
> It is tragic because there is some significant positives here, more than I usually see, some significant period of life where you were apparently a productive, law-abiding citizen, got some education.
>
> And even now, [your former employer] writes about what a great employee you are and it is a shame that you can't be allowed to pursue that . . . .

¶ 22. The trial court said that given Odom's criminal history and current crime, "you're a candidate for maximum sentencing, but given the length of the

856

reconfinement here, I'm going to impose a concurrent sentence." The trial court sentenced Odom to seven-and-a-half years of initial confinement and five years of extended supervision on the 2004 conviction, and reconfinement of four years, eleven months, nineteen days. The trial court found Odom eligible for the Earned Release Program, recognizing that may allow him to be released before he has served the full term of initial confinement.

¶ 23. The trial court's sentencing remarks, provided in detail above, provide adequate support for the trial court's exercise of discretion. The trial court discussed the primary factors for the sentencing court to consider: the gravity of the offense, the character of the offender, and the public's need for protection. *See Larsen*, 141 Wis. 2d at 427.

¶ 24. Odom presents numerous challenges to the sentences. He argues that the trial court "disregarded" his positive attributes. On the contrary, the trial court acknowledged that Odom had been a productive member of society with an employer who liked him. However, the trial court recognized that the numerous crimes Odom had committed since the age of thirty stood in stark contrast to that past.

¶ 25. Odom also argues that the trial court "failed to recite the three primary factors a trial court must consider and its actual consideration did not meaningfully extend to all factors of relevance." While it is true that the trial court did not explicitly *identify* the three factors, it clearly *discussed* the three primary factors. It described the burglary for which Odom was convicted and the read-in burglary. It discussed Odom's criminal history, family and employment. It noted the need to protect the public from Odom's crimes, noting that

Odom was at high risk to reoffend. To the extent the trial court placed greater emphasis on Odom's criminal history, that was within the trial court's power. *See Wickstrom*, 118 Wis. 2d at 355.

¶ 26. Odom contends that the trial court failed to explain its "leap to the highest sentence available [on the sentencing matrix] when the factors warranting a maximum sentence were not present." As the State notes, a trial court is not required to follow the sentencing guidelines, but only to explain its departure. *See* WIS. STAT. § 973.017(10); *State v. Speer*, 176 Wis. 2d 1101, 1125–26, 501 N.W.2d 429 (1993). The trial court explicitly addressed the matrix issue:

> The sentence I have imposed is greater than the matrix suggests and I will indicate the reasons here why, it is primarily the lengthy record is there, and the promptness with which you reoffended and the read-in that caused me to feel that something more than the guideline worksheet matrix recommendation is required.

This explanation is sufficient to explain the trial court's departure. We also note that Odom's two sentences are concurrent; the trial court could have ordered the sentence for the 2004 sentence to be served consecutively, which would have increased Odom's confinement by nearly five years.

¶ 27. Odom argues that the trial court was inconsistent in evaluating his level of culpability for the burglary. We disagree. The trial court's explanation of the fact that it did not feel the need to resolve the question whether Odom actually broke into the store was satisfactory. The trial court's careful analysis does

not, as Odom suggests, imply that the trial court was basing its sentence on hypothesis.

¶ 28. Next, Odom contends that the trial court "gave no value to substance abuse treatment needs and progress." We are not persuaded. *Gallion* did not change the principle that the trial court has the discretion to emphasize any of the sentencing factors as long as it considers all the pertinent factors. *See State v. Stenzel*, 2004 WI App 181, ¶ 9, 276 Wis. 2d 224, 688 N.W.2d 20. Here, the sentencing transcript reflects that the trial court considered all the pertinent factors, including the mitigating factors of Odom's remorse and need for treatment. It acknowledged its hope that Odom would beat his addiction, but opined that it would be difficult. In response to this consideration, the trial court ordered Odom eligible for the Earned Release Program, stating: "[S]o I am left trying to decide, do we give you . . . [another] chance here through the earned release program? A lot of other things will have to fall into place for you to do that, but I decided that after that much time in prison . . . it is in our interest to try yet again before you get out." We discern no erroneous exercise of discretion or violation of *Gallion* in this record.

¶ 29. Finally, Odom objects to the imposition of "maximum sentences" on both matters. As the State notes, Odom's argument is misleading because Odom received concurrent sentences, reducing his confinement by nearly five years. Moreover, for the reasons detailed above, the trial court's sentence is justified by Odom's lengthy record and significant failures after numerous releases.

859

### III. Objections specific to the reconfinement

■■■

¶ 30. Odom presents arguments specific to the reconfinement order. He contends that the trial court failed to review the original sentence or sentencing transcript. He relies on *State v. Reynolds,* 2002 WI App 15, 249 Wis. 2d 798, 643 N.W.2d 165, which held that "when the judge is not the one who presided at the original sentencing, it is particularly important that the judge, '[l]ike the appellate court, . . . be able to rely upon the entire record, *including the previous comments at the first sentencing.*'" *See id.,* ¶ 9 (citation omitted; alterations, omissions and italics in original).

¶ 31. In response, the State argues that *Reynolds* does not apply. We agree. We addressed this issue in *State v. Jones,* 2005 WI App 259, 288 Wis. 2d 475, 707 N.W.2d 876, where we considered a defendant's sentencing after revocation of extended supervision, stating:

> *Reynolds* holds that where the "record does not reflect the sentencing judge's awareness of the information in the presentence investigation report, and of the factors the trial judge found significant in . . . the withholding of sentence, resentencing is appropriate." *Reynolds,* 249 Wis. 2d 798, ¶ 2. We conclude that *Reynolds* is not applicable here because of a significant and meaningful difference in the procedural background. In *Reynolds,* the circuit court withheld sentence and placed Reynolds on probation; a different judge imposed sentence *for the first time* after revocation of Reynolds's probation. *Id.,* ¶ 4. We conclude that *Reynolds* is not sufficiently analogous to the case at hand and reject [the defendant's] arguments to the contrary.

*Jones,* 288 Wis. 2d 475, ¶ 13. We are also satisfied that the trial court met the requirements for a sentencing

after revocation of extended supervision, which were discussed in *Brown*, 712 N.W.2d 899, ¶ 17.

¶ 32. Finally, Odom argues that the trial court "did not use the [extended supervision] revocation summary." We disagree. The trial court referenced the summary, indicated that it had received the report and asked for any corrections. It explicitly rejected the report's recommendation, stating that in light of Odom's record, reconfinement as suggested (one year, five months, twenty-six days) "would be a joke." The trial court was not required to accept the recommendation, and the record shows that the trial court considered it. We reject Odom's argument.

## IV. Sentencing credit

¶ 33. Odom argues that the trial court erroneously amended its order to provide him only forty-eight days of sentence credit on the reconfinement sentence. He complains that the trial court failed to offer adequate reasons for this amendment.

¶ 34. The State concedes Odom is eligible for a full one-hundred-and-two days of sentence credit on both sentences, but not because the trial court erroneously exercised its discretion. *See State v. Lange*, 2003 WI App 2, ¶ 41, 259 Wis. 2d 774, 656 N.W.2d 480 (sentence credit determinations are a question of law). Rather, the State asserts that because Odom was sentenced on the same day to concurrent sentences for his revocation of extended release and the new burglary charge, he is entitled to dual credit. We agree. *See State v. Presley*, 2006 WI App 82, ¶ 15, 292 Wis.2d 734, 715 N.W.2d 713 ([D]defendant was "entitled to sentence

credit on the new charge from the date of his arrest until the day of sentencing on both charges because while his extended supervision was revoked, his 'resentencing' had not yet occurred."). Therefore, we reverse the order reducing Odom's sentence credit and remand with directions to issue an amended reconfinement order granting Odom one-hundred-and-two days of credit on the reconfinement sentence.

*By the Court.*—Affirmed in part; reversed in part and cause remanded with directions.