PER CURIAM.
¶1 Damien D. McDade appeals from a judgment of conviction, entered upon his guilty pleas, for five felonies. He also appeals from an order denying his postconviction motion for sentence modification. McDade seeks sentence modification on grounds that his total sentence is "unduly harsh and severe, especially in light of the sentences" imposed on two co-defendants. (Capitalization and bolding omitted.) We affirm the judgment and order.
BACKGROUND
¶2 The criminal complaint charged McDade with five felonies, including one that was committed on October 14, 2015; one that was committed on November 17, 2015; and three that were committed on November 24, 2015. The October 14, 2015 crime was delivery of a controlled substance (heroin), as a party to a crime and as a subsequent offense. The complaint alleged that McDade and a co-defendant, Chad Boruch, sold heroin to a confidential informant. The complaint charged Boruch with one count of delivery of a controlled substance (heroin), as a party to a crime, for participating in that drug sale.
¶3 The November 17, 2015 crime was also delivery of a controlled substance (heroin), as a subsequent offense. The complaint alleged that McDade sold heroin to a confidential informant.
¶4 McDade was charged with three felonies related to the execution of a search warrant at his home on November 24, 2015. Those crimes included: (1) possession with intent to deliver a controlled substance (heroin) by use of a dangerous weapon, as a party to crime and as a subsequent offense; (2) being a felon in possession of a weapon; and (3) keeping a drug house, as a subsequent offense. The complaint alleged that when the officers executed the search warrant, McDade was not at home, but the officers encountered a woman named Tartianna Merrill, whose purse contained heroin, a digital scale, and a gun, all of which she said belonged to McDade. Merrill was charged with one count of possession with intent to deliver a controlled substance (heroin) by use of a dangerous weapon, as a party to a crime, for having those items in her purse.
¶5 On the day McDade's case was scheduled for trial, he decided to plead guilty as charged in the amended information.[1] At sentencing, McDade was facing a maximum of seventy-seven years of imprisonment, including fifty-five years of initial confinement and twenty-two years of extended supervision. The State recommended a total sentence of ten to fifteen years of initial confinement and ten to fifteen years of extended supervision. In doing so, the State discussed McDade's role in the crimes. It asserted that McDade was a drug dealer who used Boruch, a drug addict, and Merrill, a young woman with no previous criminal history, to further his criminal activities. The State also discussed McDade's criminal history, which included a misdemeanor conviction for carrying a concealed weapon, a felony conviction for delivering cocaine, a municipal citation for assault and battery, and additional police contacts. The State noted that McDade was given probation for his prior felony and performed poorly on probation, which was revoked.
¶6 The defense also discussed McDade's co-defendants. Trial counsel asserted that "Boruch is not an innocent dupe" and noted that he was the person contacted by the confidential informant to provide drugs. The defense further asserted that Merrill was not "an innocent bystander either," emphasizing that Merrill cooperated with the State to avoid a felony conviction.
¶7 The sentencing court sentenced McDade to a total of nine years of initial confinement and nine years of extended supervision.[2] In doing so, it characterized McDade's offenses as "part of ongoing conduct ... that was the distribution of a very dangerous poison in our community." The trial court noted that law enforcement had confiscated eighteen grams of heroin from McDade over the course of six weeks, which was equal to about 360 doses of the drug.
¶8 The sentencing court also discussed the roles of Boruch and Merrill, both of whom the court sentenced after they pled guilty to reduced charges. The sentencing court said: "Who is the most culpable of the three in this group? Clearly it is [McDade], there's no doubt in my mind about that." The sentencing court noted that Boruch was motivated by his heroin addiction and that McDade took advantage of Merrill's vulnerability.
¶9 Represented by postconviction counsel, McDade filed a postconviction motion seeking modification of his sentence. His motion asserted that his total sentence is "unduly harsh and severe, especially in light of the sentences of the two co-defendants, who were sentenced only to probation." (Bolding omitted.)
¶10 The postconviction court denied the sentence modification motion in a written order, rejecting McDade's argument that his sentence is unduly harsh on its own and when compared to the sentences imposed on his co-defendants.[3] The postconviction court explained:
By itself, a disparity between the sentences of co-defendants fails to support a claim of undue harshness. A mere disparity is not improper if the individual sentences are based upon individual culpability and rehabilitative needs.... [McDade] plainly was not similarly situated with Merrill and Boruch in terms of his culpability and rehabilitative needs.... [McDade] was convicted of substantially more offenses than his [co-]actors. He presented with an extensive criminal record involving guns, drugs and violence. The defendant was given an opportunity on probation, but it failed to curb his behavior. The [sentencing] court determined that the defendant was the most culpable among his co-actors, and the record supports that determination. The court also explained how the defendant manipulated his co-actors and took advantage of their vulnerabilities, which aggravated his case.
In sum, the defendant was convicted of multiple, serious offenses, he demonstrated extensive rehabilitative needs, as exemplified by his prior record and his character for manipulation, and he presented a serious risk to the community by his willingness to disseminate a highly addictive and potentially lethal drug purely for financial gain. The [sentencing] court weighed all of these factors when it found a high need to protect the community from the defendant's dangerous and escalating criminality. The sentence imposed was intended to punish the defendant, to deter him and others from distributing heroin, to promote his rehabilitation and to protect the community. In order to accomplish those sentencing goals, the court determined that the total sentence necessary in this case was nine years of initial confinement and nine years of extended supervision. The sentence imposed is significant, but it is not unduly harsh or severe under the circumstances, whether viewed by itself or compared to the co-actors' sentences.
(Citation omitted; single paragraph divided into two paragraphs.) This appeal follows.
DISCUSSION
¶11 Wisconsin recognizes the importance of "individualized sentencing." See State v. Gallion , 2004 WI 42, ¶48, 270 Wis. 2d 535, 678 N.W.2d 197. A sentencing court must consider the principal objectives of sentencing, including the protection of the community, the punishment and rehabilitation of the defendant, and deterrence to others. State v. Ziegler , 2006 WI App 49, ¶23, 289 Wis. 2d 594, 712 N.W.2d 76. In seeking to fulfill the sentencing objectives, the court should consider primary factors including the gravity of the offense, the character of the offender, and the protection of the public, and the court may consider additional factors. See State v. Odom , 2006 WI App 145, ¶7, 294 Wis. 2d 844, 720 N.W.2d 695.
¶12 "Within certain constraints, Wisconsin [trial] courts have inherent authority to modify criminal sentences." State v. Cummings , 2014 WI 88, ¶70, 357 Wis. 2d 1, 850 N.W.2d 915 (citation omitted). However, the trial court may not "modify a sentence merely 'on reflection and second thoughts alone.' " Id. (citation omitted). If a defendant does not establish a new factor, the trial court "has authority to modify a sentence only under certain narrow circumstances," including if the trial court "determines that the sentence is unduly harsh or unconscionable." Id. , ¶71 (citation omitted). "A sentence is unduly harsh or unconscionable 'only where the sentence is so excessive and unusual and so disproportionate to the offense committed as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances.' " Id. , ¶72 (citation omitted).
¶13 On appeal, "[w]e review a trial court's conclusion that a sentence it imposed was not unduly harsh and unconscionable for an erroneous exercise of discretion." Id. , ¶45 (citations, quotation marks, and emphasis omitted). "We will not set aside a discretionary ruling of the trial court if it appears from the record that the court applied the proper legal standards to the facts before it, and through a process of reasoning, reached a result which a reasonable judge could reach." Id. (citation omitted).
¶14 Here, McDade does not seek sentence modification on new factor grounds. Rather, he seeks sentence modification on grounds that his total sentence is "unduly harsh and unconscionable," especially when compared to the sentences of his co-defendants. See id. The postconviction court concluded that McDade's total sentence is not unduly harsh or unconscionable, and we agree. The sentencing court applied the standard sentencing factors and explained their application in accordance with the framework set forth in Gallion and its progeny. McDade's total sentence of eighteen years of imprisonment for five felonies is well within the maximum total sentence of seventy-seven years and does not "shock public sentiment." See Cummings , 357 Wis. 2d 1, ¶72 (citation omitted); State v. Scaccio , 2000 WI App 265, ¶18, 240 Wis. 2d 95, 622 N.W.2d 449 ("A sentence well within the limits of the maximum sentence is unlikely to be unduly harsh or unconscionable.").
¶15 Further, we are not persuaded that the postconviction court erroneously exercised its discretion when it concluded that the differences in the sentences imposed on McDade's co-defendants did not support McDade's claim that his sentence is unduly harsh or unconscionable. "Although a sentence given to a similarly situated codefendant is relevant to the sentencing decision, it is not controlling." State v. Giebel , 198 Wis. 2d 207, 220-21, 541 N.W.2d 815 (Ct. App. 1995) (internal citation omitted).
¶16 Moreover, we agree with the postconviction court that Boruch and Merrill were not similarly situated to McDade. Boruch pled guilty to one count of delivery of heroin (less than three grams), as a party to a crime, which is a Class F felony. It was Boruch's first criminal conviction, although he previously had a narcotics case dismissed after he completed a deferred prosecution agreement. The sentencing court imposed and stayed a sentence of one year of initial confinement and one year of extended supervision, and it placed Boruch on probation for two and one-half years. Merrill pled guilty to one count of resisting or obstructing an officer, which is a Class A misdemeanor. It was her first conviction. The sentencing court imposed and stayed a sentence of 120 days in jail and placed Merrill on probation for one year.
¶17 In contrast, McDade pled guilty to five felonies based on crimes he committed on three different days. He had previously been convicted of a felony and a misdemeanor, and he had experienced difficulties on probation in the past. Finally, the sentencing court determined that McDade was "the most culpable of the three" defendants. In light of these significant differences, we do not agree that the postconviction court erroneously exercised its discretion when it concluded that the differences in the sentences "fail[ed] to support a claim of undue harshness."
¶18 Finally, we turn to McDade's argument that the sentencing court was "required to fully explain the differences in the conduct of the co-actors, the differences in their prior records, and the differences in their relative remorse for their actions when it impose[d] sentences on the co-actors because they are all pertinent to the sentencing decision." In support of this proposition, McDade cites State v. Schael , 131 Wis. 2d 405, 415, 388 N.W. 2d 641 (Ct. App. 1986), but he does not offer further discussion of that case. Schael contains a single paragraph discussing the defendant's complaint about his sentence as compared to those of his accomplices:
Schael argues that his sentence was unduly disproportionate to the sentences imposed on the accomplices. The trial court, at sentencing, fully explained the differences in the conduct of the actors, their prior records and their relative remorse. We are unpersuaded that these are considerations not pertinent to proper sentencing discretion.
See id. McDade's argument is inadequate to persuade us that Schael imposes on sentencing courts an affirmative duty to discuss co-defendants' conduct, criminal histories, and remorse, and we decline to develop an argument for McDade, especially when he chose not to file a reply brief refuting the State's analysis of the Schael case. See State v. Pettit , 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (court of appeals may "decline to review issues inadequately briefed"); Industrial Risk Insurers v. American Eng'g Testing, Inc. , 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82 ("[W]e will not abandon our neutrality to develop arguments" for the parties.); Schlieper v. DNR , 188 Wis. 2d 318, 322, 525 N.W.2d 99 (Ct. App. 1994) (we may take as a concession the failure to refute in a reply brief a proposition asserted in a response brief).
¶19 In summary, we discern no erroneous exercise of discretion in either the sentencing court's original sentence or in the postconviction court's determination that McDade's total sentence is not unduly harsh on its own or in comparison to the sentences imposed on his co-defendants. Therefore, we affirm.
By the Court. -Judgment and order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

Count one was amended to delivery of three grams or less of heroin, rather than three to ten grams, based on a crime lab report indicating the amount of heroin seized was slightly less than three grams.

The Honorable Carolina Stark sentenced McDade. We will refer to Judge Stark as the sentencing court.

The Honorable Frederick C. Rosa denied the postconviction motion. We will refer to Judge Rosa as the postconviction court.