PER CURIAM.
¶1 Daniel L. Shilts, Jr., appeals from a judgment convicting him of ten counts relating to the possession of improvised explosives or their materials and from an order denying his postconviction motion for sentencing relief. Shilts argues that the circuit court erred in denying his suppression motion, erroneously exercised its sentencing discretion, and imposed an unduly harsh and excessive sentence. For the reasons that follow, we affirm.
¶2 Sheriff's deputies were dispatched to Shilts's house after reports of a noise that sounded like an explosion. Shilts came out of his house and told the deputies he had been welding and thought an aerosol can might have exploded. Deputy Timothy Putz observed that Shilts had a fresh cut on his finger and dried blood on his jeans. With Shilts's permission, Putz walked onto the front porch. He saw that eight windows on the porch were blown out, and two windows on the side of the house were blown into the house. Putz smelled burnt black powder. He believed that the amount of damage from the explosion, the lack of shrapnel or fragments from a can, and the odor of powder were inconsistent with Shilts's explanation. Putz was aware that Shilts had been arrested for an explosives violation in the past and that he was presently on extended supervision. Putz asked Shilts for consent to search the house and Shilts refused, stating he wanted to clean up before his wife got home.
¶3 The deputies entered Shilts's home to conduct a search pursuant to WIS. STAT. § 302.113(7r) (2015-16),[1] which permits law enforcement to search the residence of a person on extended supervision upon a reasonable belief that he or she has engaged in criminal activity or violated a condition of supervision. They observed explosive powder, four mortar balls, a mortar tube, and a mixer containing what appeared to be various chemicals and powders used in the construction of explosive devices. The next day, various law enforcement agencies, including the Milwaukee County Bomb Squad, searched the house pursuant to a search warrant. They found fifty-one improvised explosive devices, along with chemicals and materials used to make such devices.
¶4 Shilts was charged with fifty-one counts of possession of improvised explosives and one count of possessing improvised explosives materials. Shilts moved to suppress all evidence found in his home on the ground that deputies lacked sufficient reasonable suspicion to conduct a warrantless search.[2] After an evidentiary hearing, the circuit court denied the motion, concluding that based on "sufficient, specific, articulable facts," and "the rational inferences from those facts," a reasonable officer would have had a basis to suspect that Shilts had committed or was committing a crime.
¶5 Pursuant to an agreement, Shilts pled no contest to ten of the charges, and the remaining forty-two counts were dismissed but read in at sentencing. The State agreed to recommend a total sentence of twenty-eight years, with eight years of initial confinement followed by twenty years of extended supervision. The circuit court imposed a bifurcated sentence totaling thirty years, with fifteen years of initial confinement followed by fifteen years of extended supervision. The sentence was ordered to run consecutive to the sentence imposed following the revocation of Shilts's extended supervision.
¶6 Shilts moved for postconviction relief, asserting that the circuit court erroneously exercised its discretion at sentencing, and that its sentence was unduly harsh and unconscionable. The circuit court denied Shilts's postconviction motion. Shilts appeals.
The circuit court properly denied the suppression motion because at the time officers entered the home, they reasonably suspected that Shilts had committed, was committing, or was about to commit a crime.
¶7 The circuit court determined and the parties do not dispute that law enforcement searched Shilts's home pursuant to WIS. STAT. § 302.113(7r), which applies to felony offenders released to extended supervision and provides that:
A person released under this section, his or her residence, and any property under his or her control may be searched by a law enforcement officer at any time during his or her period of supervision if the officer reasonably suspects that the person is committing, is about to commit, or has committed a crime or a violation of a condition of release to extended supervision. Any search conducted pursuant to this subsection shall be conducted in a reasonable manner and may not be arbitrary, capricious, or harassing. A law enforcement officer who conducts a search pursuant to this subsection shall, as soon as practicable after the search, notify the department.
¶8 The issue for this court is whether the circuit court properly determined that at the time officers entered Shilts's home, there was reasonable suspicion to believe he had committed or was committing a crime or a violation of his release conditions. The determination of reasonableness is a commonsense test based on the totality of the facts and circumstances, and the reasonable inferences therefrom. See State v. Waldner , 206 Wis. 2d 51, 56, 58, 556 N.W.2d 681 (1996). "In reviewing a motion to suppress, we apply a two-step standard of review." State v. Eason , 2001 WI 98, ¶9, 245 Wis. 2d 206, 629 N.W.2d 625. We will uphold a circuit court's factual findings unless they are clearly erroneous. Id . We decide independently whether those facts violate constitutional principles. Id .
¶9 We conclude that there were ample facts supporting a reasonable suspicion that Shilts had committed, was committing, or was about to commit a crime. Officers were dispatched after multiple callers reported hearing an explosion at Shilts's house. One caller observed smoke in the area. Upon arriving at Shilts's house, one of the complainants informed Putz that there had been an extremely loud noise, which sounded like an explosion, and flying glass. Shilts came outside, and Putz noticed a fresh cut on one of his fingers and dried blood on his pants. Shilts told Putz he had been welding and, after expressing uncertainty about what caused the explosion, suggested he had ignited an aerosol can. Putz observed that ten windows were shattered by the explosion. He recognized a "fairly strong" smell of burnt black powder. He testified that, based on the amount of damage, the absence of any can fragments, and the smell of black powder, the cause of the explosion was inconsistent with an exploding aerosol can. Putz was aware that Shilts had a criminal history involving the possession of explosives. Together, these specific articulable facts support an objectively reasonable suspicion of criminal activity.
¶10 Shilts argues that the search was unlawful because officers failed to specifically articulate for which particular crime they possessed reasonable suspicion. We are not persuaded. A law enforcement officer is not required to identify a specific crime with particularity. The issue is whether the officer has reasonable suspicion that criminal activity is afoot. Waldner , 206 Wis. 2d at 55.
¶11 Shilts contends that, to the extent the officers might have suspected criminal activity relating to improvised explosives, they possessed only a hunch, not sufficient facts constituting reasonable suspicion. Though he concedes "there was clearly an explosion of some type," he asserts there was "no objectively reasonable evidence" tying the explosion to the possession of improvised explosive materials. However, "reasonable suspicion" is a commonsense test and presents a lower burden than the "probable cause" necessary to justify other intrusions. Id. at 56. Shilts ignores the inherently unusual nature of a residential explosion sufficient to shatter windows and generate multiple calls to police. The incident itself, coupled with the implausibility of Shilts's explanation to Putz and an awareness of Shilts's prior similar conduct, provides reasonable suspicion of criminal activity involving explosives. We also reject Shilts's assertion that the existence of other evidence, such as a welder in the front yard, and an item on the front porch bearing fresh weld marks, supports his story of a welding accident and defeats reasonable suspicion. Officers are not required to rule out the possibility of innocent behavior before initiating an intrusion based on reasonable suspicion. See id. at 60.
The circuit court properly exercised its discretion at sentencing and in denying Shilts's postconviction motion.
¶12 Shilts argues that the sentencing court erroneously exercised its discretion by neglecting to consider necessary factors and by failing to adequately explain its decision-making process. It is a well-settled principle of law that sentencing is committed to the circuit court's discretion. State v. Gallion , 2004 WI 42, ¶17, 270 Wis. 2d 535, 678 N.W.2d 197. The primary factors the sentencing court must consider are the gravity of the offense, the character of the offender, and the protection of the public. State v. Harris , 2010 WI 79, ¶28, 326 Wis. 2d 685, 786 N.W.2d 409. The weight attributed to each factor is within the circuit court's wide discretion. State v. Grady , 2007 WI 81, ¶31, 302 Wis. 2d 80, 734 N.W.2d 364. Appropriate sentencing objectives include, but are not limited to, community protection, punishment and/or rehabilitation of the defendant, and deterrence. Gallion , 270 Wis. 2d 535, ¶40.
¶13 Review of a sentencing decision is limited to determining whether there was an erroneous exercise of discretion, and "the defendant bears the heavy burden of showing that the circuit court erroneously exercised its discretion." Harris , 326 Wis. 2d 685, ¶30. We afford the sentencing court a strong presumption of reasonability, and if discretion was properly exercised, we follow "a consistent and strong policy against interference" with the court's sentencing determination. Gallion , 270 Wis. 2d 535, ¶¶17-18 (citation omitted). We will sustain a sentencing court's reasonable exercise of discretion even if this court or another judge might have reached a different conclusion. State v. Odom , 2006 WI App 145, ¶8, 294 Wis. 2d 844, 720 N.W.2d 695.
¶14 Shilts does not dispute that the sentencing court considered a wide range of accurate facts and proper factors and objectives in determining sentence. As he argued postconviction, Shilts maintains that the circuit court did not adequately consider his rehabilitative needs, including his long period of sobriety following his last OWI arrest in 2008. Shilts's claims are contradicted by the court's remarks at sentencing and at the postconviction hearing.
¶15 Twice at sentencing the court explicitly mentioned rehabilitation as an objective. Postconviction, the circuit court confirmed that it had considered Shilts's rehabilitative needs in imposing sentence. The court explained that while it may not have used "magic words," it "stressed the fact" that he had been on probation multiple times, "and yet here we are again." The court reiterated that its primary sentencing objectives were "the protection of the community, punishment, and deterrence," but that it "did consider the defendant's rehabilitative needs," and recognized that he "had these opportunities before." The court pointed out that, at sentencing, it referenced the fact that Shilts committed these offenses while on supervision after having completed the prison's early release program. The circuit court engaged in a reasoning process based on the facts of record and imposed a sentence "based on a logical rationale founded upon proper legal standards." McCleary v. State , 49 Wis. 2d 263, 277, 182 N.W.2d 512 (1971).
¶16 Similarly, we reject Shilts's claim that the circuit court failed to adequately consider his lack of malicious intent. The sentencing court explicitly acknowledged that Shilts did not intend to hurt anyone and, in fact, did not hurt anyone. It also recognized that despite his previous conviction for possessing improvised explosives in his home, Shilts endangered numerous people by repeating the same dangerous conduct in the same residential area. The court reasonably concluded that a lengthy term of imprisonment was necessary to protect the public before Shilts hurt somebody, even if unintentionally.
¶17 Shilts also faults the circuit court for failing to explain why fifteen years of prison was necessary to achieve its objectives. However, a sentencing court is not required "to provide an explanation for the precise number of years chosen." See State v. Taylor , 2006 WI 22, ¶30, 289 Wis. 2d 34, 710 N.W.2d 466. "[T]he exercise of discretion does not lend itself to mathematical precision." Gallion , 270 Wis. 2d 535, ¶49. The circuit court was required to explain why it imposed a lengthy term of initial confinement, and it did just that, explaining that its sentence was necessary to protect the public, to punish Shilts for again jeopardizing people's lives, and for general and specific deterrence.
The circuit court's sentence was not unduly harsh.
¶18 Shilts asserts that his sentence is unduly harsh. A sentence is unduly harsh only if its length is "so excessive and unusual and so disproportionate to the offense committed as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances." State v. Davis , 2005 WI App 98, ¶15, 281 Wis. 2d 118, 698 N.W.2d 823 (quoting Ocanas v. State , 70 Wis. 2d 179, 185, 233 N.W.2d 457 (1975) ). In determining whether a sentence is unduly harsh or excessive, we review the circuit court's sentence for an erroneous exercise of discretion, and we are to presume that the sentencing court acted reasonably.[3] State v. Scaccio , 2000 WI App 265, ¶17, 240 Wis. 2d 95, 622 N.W.2d 449. "A sentence well within the limits of the maximum sentence is unlikely to be unduly harsh or unconscionable." Id. , ¶18.
¶19 In this case, the circuit court imposed a thirty-year sentence, which is half of the sixty-year maximum penalty. The sentencing court relied on the facts of record and the correct law and reached a reasonable decision. See McCleary , 49 Wis. 2d at 277. Shilts has not shown any "unreasonable or unjustified basis" for his sentence that would cause us to question its propriety. See Taylor , 289 Wis. 2d 34, ¶18 (citation omitted).
By the Court. -Judgment and order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

Shilts also moved to suppress any derivative evidence, including statements he made to the deputies after they told him they would be searching his home, and physical evidence seized pursuant to the search warrant, which was issued based on fruits from the prior warrantless search.

Similarly, we review the circuit court's postconviction conclusion that its sentence was not unduly harsh and unconscionable for an erroneous exercise of discretion. State v. Giebel , 198 Wis. 2d 207, 220, 541 N.W.2d 815 (Ct. App. 1995).