COURT OF APPEALS
DECISION
DATED AND FILED

November 26, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2017AP2273-CR**

Cir. Ct. No. 2013CF1967

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

KENDRICK DEAVANE ALEXANDER,

DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Milwaukee County:  JONATHAN D. WATTS and FREDERICK C. ROSA, Judges.  *Order affirmed in part, reversed in part, and cause remanded with directions.*

Before Brash, P.J., Dugan and Fitzpatrick, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Kendrick Deavane Alexander appeals from a judgment of conviction for two counts of first-degree recklessly endangering safety by use of a dangerous weapon and one count of being a felon in possession of a firearm. *See* WIS. STAT. §§ 941.30(1), 939.63(1)(b), and 941.29(2)(a) (2013-14).[1] Alexander also appeals from an order denying his postconviction motion that sought a new trial or, in the alternative, resentencing.[2]

¶2     We conclude that Alexander is entitled to a *Machner* hearing with respect to his claim that trial counsel provided ineffective assistance.[3] Therefore, we reverse that part of the postconviction order and remand for a *Machner* hearing. In light of the remand, it would be premature to consider Alexander's request that this court exercise its discretion and order a new trial in the interest of justice, so we will not address that request. However, in the interest of judicial economy, this court has considered Alexander's argument that the trial court erroneously exercised its sentencing discretion when it stated, "I represent the community." We conclude that the trial court's statement, viewed in context, did not constitute an erroneous exercise of discretion. Therefore, we affirm that part of the postconviction order denying Alexander's request for resentencing.

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2] While Alexander appeals from both a judgment and an order, we address only the order for the reasons set forth in the opinion.

The Honorable Jonathan D. Watts presided over Alexander's jury trial and sentenced him. The Honorable Frederick C. Rosa denied Alexander's postconviction motion.

[3] *See State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979).

## BACKGROUND

¶3 The background facts are undisputed. On the night of April 6, 2013, two women fought in the street while others watched.[4] At one point, a man exited a burgundy-colored vehicle, raised a gun, and fired shots that struck and injured two individuals, E.W. and C.J. The alleged shooter, Alexander, was charged with two counts of first-degree recklessly endangering safety and one count of being a felon in possession of a firearm.

¶4 At trial, the issue was the identity of the shooter. Both E.W. and C.J. testified that they did not previously know Alexander, but they were able to identify him in a photo array and in court as the man who shot them. One of the two women who fought in the street, S.J., testified that she had seen Alexander before and recognized him from his Facebook page, which she viewed before the police showed her a photo array. She said the photo of Alexander she saw on Facebook showed him holding two guns. S.J. also testified that she believed that E.W. and C.J. had "probably communicated" with each other about the fact that Alexander was on Facebook.

¶5 K.F., who is a friend of S.J., testified that she saw the person fire a gun. She identified Alexander as the shooter in a photo array that she was shown a few days after the shooting, and she identified him in court. K.F. also testified that she had seen a photo of Alexander on Facebook before identifying him in the photo array.

---

[4] Police officers were dispatched to the scene shortly before one o'clock in the morning on April 7, 2013.

¶6     Trial counsel questioned Detective Jeffrey Sullivan about the photo arrays he used with the witnesses. Trial counsel asked Sullivan about the effect of having a witness see an individual's photo on Facebook prior to viewing a photo array, and Sullivan acknowledged that "it does lessen the anonymity of a photo array if people are shown" an individual's photo ahead of time. However, when asked whether people sometimes "make false identification[s]" of a person in a photo array, Sullivan stated: "In my 22 years, I can't recall of it happening. I don't know throughout the country. I can't speak specifically on the case. In my 22 years, I have never known a person to identify [someone] that actually wasn't the suspect in cases that I have been involved in."

¶7     Sullivan also disagreed with trial counsel's suggestion that "at night it's harder to identify somebody than during the day." Sullivan said: "No, I wouldn't agree with that blanket statement. Depends on the lighting; depends on the distance. During the day, if they're a block away, it would be hard to identify someone. At night, with lights, it's much easier."

¶8     The jury found Alexander guilty of all three charges. The trial court sentenced him to a total of ten years of initial confinement and six years of extended supervision.

¶9     Alexander filed a postconviction motion seeking a new trial on grounds that his trial counsel performed deficiently in two ways. The first alleged deficiency was failing to present expert testimony on eyewitness identification, which Alexander claimed was necessary to "explain[] to the jury the pitfalls of eyewitness identification and the concerns about the reliability of the identifications in this particular case." Alexander argued that "an expert witness could have countered some of the questionable statements made by [Detective]

Sullivan regarding identification, or eliminated the need to ask [Detective] Sullivan identification questions." Alexander attached to his postconviction motion an analysis by Dr. Lawrence T. White, Professor and Chair of Psychology at Beloit College, concerning the identifications in this case and the opinions offered by Sullivan.[5]

¶10   The second deficiency alleged in the postconviction motion was that trial counsel did not interview and present alibi testimony from Alexander's girlfriend, Tamara Hackett, who was living with Alexander at the time of the shooting. The motion indicated that Hackett would have testified that she was with Alexander both the night of and the night after the shooting, celebrating their two-year anniversary by watching movies at home. The motion further alleged that Hackett spoke to Alexander's trial counsel before the trial, and trial counsel "simply told her that this information would not help [Alexander's] trial." Alexander also asserted that, if Hackett had testified at trial, Alexander "would have exercised his constitutional right to testify." Alexander concluded:

> Given that Ms. Hackett's testimony would have supported the defense's theory of misidentification—that Mr. Alexander was not at the scene of the shooting—and also impacted Mr. Alexander's decision to exercise his constitutional right to testify, trial counsel's failure to call Ms. Hackett as a witness constituted deficient performance.

¶11   In addition to arguing that Alexander is entitled to a new trial based on ineffective assistance of trial counsel, Alexander sought a new trial in the interest of justice. Finally, Alexander asserted that if he was not granted a new

---

[5] For instance, Dr. White questioned Sullivan's testimony that in his experience, no witness had ever falsely identified someone. The expert wrote: "This seems highly unlikely given that, in 10 studies of actual police lineups, 33% of witnesses who made an identification chose a known-innocent filler."

trial, he should at least be resentenced because at one point during the sentencing hearing, the trial court stated, "I represent the community."

¶12     The State opposed the postconviction motion.  The trial court denied the motion without an evidentiary hearing, except it vacated two of the three DNA surcharges that it had imposed.[6]  The trial court rejected Alexander's ineffective assistance claim on the grounds that, even if trial counsel performed deficiently, Alexander had not been prejudiced.  With respect to Alexander's sentencing request, the trial court found that the trial court's comment at sentencing did not constitute an erroneous exercise of discretion.  This appeal follows.

## DISCUSSION

¶13     There are two primary issues on appeal.  The first is whether Alexander is entitled to an evidentiary hearing on his ineffective assistance claim.  The second is whether the trial court erroneously exercised its sentencing discretion.  We consider each issue in turn.

### I.  Request for an evidentiary hearing on ineffective assistance claim.

¶14     We begin with the applicable legal standards.  To prevail on an ineffective assistance claim, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the

---

[6] Alexander had asked the trial court to vacate the three DNA surcharges on grounds that they were improperly imposed in violation of ex post facto principles.  After the trial court vacated only two of the surcharges, Alexander filed a motion for reconsideration seeking removal of the final surcharge.  The resolution of that motion is not part of this appeal.  We also note that, in its appellate brief, the State points out that "in light of recent precedent, the [trial] court should have left all $750 of the DNA surcharges intact," but the State also acknowledges that this court "has no jurisdiction to review this issue because the State did not file a cross-appeal."  We agree that the DNA surcharge issue is not before us on appeal, and we will not further discuss the issue.

defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The postconviction court must hold a *Machner* hearing if the defendant's motion "on its face alleges sufficient material facts that, if true, would entitle the defendant to relief." *See State v. Allen*, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433. *Allen* instructs us to consider whether the motion adequately alleges "who, what, where, when, why, and how" trial counsel acted deficiently. *See id.*, ¶23. Whether the defendant's motion meets this standard is a question of law that we review independently. *See id.*, ¶9. "[I]f the motion does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief," the postconviction court has the discretion to deny the defendant's motion without a hearing. *Id.*

¶15    The question before us is whether Alexander has alleged sufficient material facts that, if true, entitle him to an evidentiary hearing on whether trial counsel provided constitutionally deficient representation. *See id.* We conclude that Alexander is entitled to a *Machner* hearing on both of the issues that he raises in his ineffective claim.

¶16    With respect to Alexander's assertion that trial counsel should have presented the testimony of an expert on eyewitness identification, we have examined both the analytical report Alexander submitted with his postconviction motion and the testimony of Detective Sullivan. Dr. White's opinion, taken as true for purposes of evaluating whether Alexander has presented sufficient material facts to require a *Machner* hearing, supports Alexander's assertion that trial counsel could have used an expert to raise doubts about the eyewitness identifications of Alexander by numerous witnesses, especially in light of allegations that those witnesses may have seen pictures of Alexander on Facebook

before viewing the photo array. The report also supports Alexander's argument that trial counsel could have avoided asking Sullivan questions that led, according to Dr. White, to the presentation of inaccurate information about eyewitness testimony. While the State urges us to conclude that "a reasonably competent attorney could have decided not to … [present] expert testimony on eyewitness identification," we conclude that it would be premature to analyze trial counsel's actions in this case until the facts concerning his decisions about seeking out an expert and questioning Sullivan are developed at a ***Machner*** hearing.

¶17    With respect to Alexander's assertion that trial counsel should have presented the alibi testimony of Hackett, we conclude that Alexander's allegations are sufficient to warrant a hearing. In his postconviction motion, Alexander alleged that Hackett was with Alexander when the crimes were committed and that she shared that information with trial counsel prior to the trial. The trial court concluded that there is not "a reasonable probability the jury would have believed her testimony." But, until Hackett's testimony is presented at a ***Machner*** hearing—where the trial court can evaluate her credibility—it would be premature to evaluate the potential impact of Hackett's testimony on a jury. Further, we are not persuaded by the State's assertions on appeal that "the record sufficiently refutes Alexander's allegation" that trial counsel "knew about an alibi defense before trial" and that "even if an alibi defense was available, a reasonably competent attorney could have decided not to present one." Rather than speculating about what trial counsel may have known or may have decided to do, we conclude that here, where Alexander has sufficiently pled his ineffective assistance claim, those facts should be developed at a ***Machner*** hearing.

¶18    In summary, we are persuaded that Alexander's postconviction motion adequately alleged the "who, what, where, when, why, and how" trial

8

counsel performed deficiently. *See Allen*, 274 Wis. 2d 568, ¶23. Therefore, we reverse that portion of the postconviction order and remand this matter for a *Machner* hearing on Alexander's ineffective assistance claim. To be clear, this court is not concluding either that trial counsel was deficient or that Alexander suffered any prejudice. We are merely concluding that Alexander has alleged sufficient facts to entitle him to a *Machner* hearing. *See State v. Sholar*, 2018 WI 53, ¶54, 381 Wis. 2d 560, 912 N.W.2d 89 ("[W]hen an appellate court remands for a *Machner* hearing, it must leave both the deficient performance and the prejudice prongs to be addressed, because whether a defendant was prejudiced depends upon the existence of deficient performance.").

## II. Sentencing challenge.

¶19     In the interest of judicial economy, we will consider the fully briefed issue of whether Alexander is entitled to resentencing based on a single statement by the trial court at the sentencing hearing. Specifically, the trial court began its sentencing remarks by addressing the gravity of the offense, the need to protect the public, and Alexander's character. *See State v. Odom*, 2006 WI App 145, ¶7, 294 Wis. 2d 844, 720 N.W.2d 695 ("The primary factors for the sentencing court to consider are the gravity of the offense, the character of the offender, and the public's need for protection."). Then, before stating the amount of time Alexander would serve in prison on each count, the trial court stated:

> I want the defendant to understand that this is not an easy job and that I'm not here simply to talk about punishment but not have it done on my behalf. *I represent the community.* I'm looking out for the safety of the community and it's your community. Part of the community is here today. Part of that community is your family, I well know that, but the other part of the community is the family of all the victims and all the people that were shot at by you and I have to look out for

everyone, so this sentence is balancing, as I said, and it considers a lot of different factors that I've touched upon.

(Emphasis added.)

¶20     Alexander argues that the trial court erred by stating, "I represent the community." Alexander contends:

> [I]t is not the function of a judge to "represent" the community. That is the job of the prosecutor. It is the prosecutor, not the judge, who identifies violations against the people and speaks "on behalf of" the community….
>
> ….
>
> Mr. Alexander agrees that a circuit court can, and should, "consider" the interests of the community when imposing sentence. However, considering the interests of the community is different than stating that "I represent the community."
>
> ….
>
> … [T]he court erroneously exercised its discretion when it stated that "I represent the community" and Mr. Alexander is entitled to a new sentencing hearing. *See generally*, **In re John Doe Proceeding**, 2004 WI 65, ¶10, 272 Wis. 2d 208, 680 N.W.2d 792 (stating that when a judge exceeds his or her powers, it is an erroneous exercise of discretion).

(Emphasis omitted; bolding added.)

¶21     On appeal, our review is limited to determining whether the trial court erroneously exercised its sentencing discretion. *See* **State v. Gallion**, 2004 WI 42, ¶17, 270 Wis. 2d 535, 678 N.W.2d 197. "When discretion is exercised on the basis of clearly irrelevant or improper factors, there is an erroneous exercise of discretion." **Id.**

¶22     Here, we are not persuaded that the trial court erroneously exercised its sentencing discretion. The trial court considered proper sentencing factors,

including the need to protect the public. *See Odom*, 294 Wis. 2d 844, ¶7. When we view the trial court's challenged statement in context, including the trial court's statements that immediately followed, it is clear that the trial court's statement that it "represent[s] the community" was part of its analysis of the need to protect the public. We are unconvinced that the particular words used in this case constituted an erroneous exercise of discretion. Therefore, we affirm that part of the trial court's order denying Alexander's request for resentencing.

## CONCLUSION

¶23 For the foregoing reasons, we conclude that Alexander is entitled to a *Machner* hearing with respect to his claim that trial counsel provided ineffective assistance. Therefore, we reverse the part of the postconviction order and remand for a *Machner* hearing. In light of the remand, we decline to consider Alexander's request that this court exercise its discretion and order a new trial in the interest of justice at this time. Finally, with respect to the sentencing, we conclude that the trial court's statement, viewed in context, did not constitute an erroneous exercise of discretion. Accordingly, we affirm that part of the postconviction order denying Alexander's request for resentencing.

*By the Court*.—Order affirmed in part, reversed in part, and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.