COURT OF APPEALS
DECISION
DATED AND FILED

July 30, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.** **2019AP1938-CR**
**2019AP1939-CR**

Cir. Ct. Nos. 2016CF137
2016CF440

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT II**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JONATHAN M. KWIATKOWSKI,

DEFENDANT-APPELLANT.

APPEALS from judgments and an order of the circuit court for Kenosha County: MARY KAY WAGNER, Judge. *Affirmed*.

Before Neubauer, C.J., Gundrum and Davis, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1   PER CURIAM. In these consolidated matters, Jonathan M. Kwiatkowski appeals from judgments convicting him of third-degree sexual assault and misconduct in public office, and an order denying his postconviction motion for resentencing or sentence modification. Specifically, Kwiatkowski argues that he is entitled to resentencing because the circuit court relied on inaccurate information and otherwise erroneously exercised its discretion in imposing sentence. In the alternative, he asserts that the existence of new factors warrants modification of his sentence. We reject his arguments and affirm.

## BACKGROUND

¶2   Kwiatkowski, then a Kenosha County corrections officer, was charged in two separate complaints with sexually assaulting K.R.J and K.I., two female inmates released to electronic monitoring. In both cases, the State charged Kwiatkowski with one count each of (1) second-degree sexual assault by a correctional staff member of an individual who was confined to a correctional institution, and (2) misconduct in public office.

¶3   The complaint involving K.I. alleged that on July 11, 2015, she came to the sheriff's department to have her electronic ankle monitor moved from one leg to the other. Kwiatkowski and Jared Reinersman, another corrections officer, were in the room when K.I. entered. Reinersman left the room. Kwiatkowski "approached [K.I.] and backed her into the lockers in the room." He then "put his hand down inside the front of her buttoned jeans and inserted his fingers into her vagina." K.I. did not consent. She did not immediately report the assault out of fear of retaliation.

2

¶4 Prior to the assault, Kwiatkowski obtained K.I.'s cell phone number from her corrections file and used a clandestine cell phone number to initiate a text exchange. K.I. believed he was trying to have sex with her. Kwiatkowski admitted that his texting with K.I. was "pretty constant" and he knew it was wrong.

¶5 The complaint also set forth "other acts" evidence involving two additional female inmates, M.A.T. and K.R.J. In August 2015, M.A.T. received an "awkward" phone call from Kwiatkowski on a "blocked number" to "chit chat." Kwiatkowski admitted that he obtained M.A.T.'s phone number from her corrections file and "block[ed] the number on his personal cell phone before calling her." Cell phone records showed that Kwiatkowski called M.A.T. four times.

¶6 The other acts involving K.R.J. were later charged in a separate complaint and form the basis for Kwiatkowski's conviction for misconduct in public office. K.R.J. was on electronic monitoring from late 2014 to early 2015. At the end of 2014, she went in to get her ankle bracelet adjusted. While behind a privacy wall, Kwiatkowski slapped her butt and put his hand up her tank top. As she left, he told her, "You better answer your phone." That night, she received a call from a private number. It was Kwiatkowski. She assumed he got her cell phone number from her corrections file. K.R.J. reported that from there, she received "multiple phone calls and thousands of texts from" Kwiatkowski. Kwiatkowski began to show up at K.R.J.'s residence and they would engage in sexual activity. After the first encounter, K.R.J. told Kwiatkowski that she was using heroin and was concerned about her upcoming urinalysis (UA). Kwiatkowski told her not to worry and he removed her name from the UA testing list. According to the complaint, jail records showed that K.R.J. was not given a UA from January 4 to January 22, 2015. Before and after that period, she was tested about every other day.

¶7 Pursuant to a negotiated settlement, Kwiatkowski pled guilty to a reduced charge of third-degree sexual assault in the case involving K.I., and to the misconduct charge in the case involving K.R.J. The State agreed to recommend an unspecified prison term for sexually assaulting K.I., and consecutive probation for misconduct in public office. The circuit court ordered a presentence investigation report (PSI) and prior to sentencing, Kwiatkowski filed a privately prepared presentence report along with a sex offender evaluation report authored by forensic psychologist Dr. Melissa Westendorf.

¶8 At sentencing, the prosecutor emphasized the abuse of power by Kwiatkowski over his vulnerable victims by using his position to gain access to their personal information and cell phone numbers, as well as to information about their mental health histories, enabling him to attack their credibility. The prosecutor challenged Westendorf's opinion that Kwiatkowski was a low risk to reoffend, pointing to several risk factors that were apparent from his behavior as well as the fact that the doctor did not do a PCL-R risk analysis often used in WIS. STAT. ch. 980 cases. The prosecutor asked the court to "send the message" to anyone else who would abuse a position of trust and target vulnerable victims, adding that punishment is "very important" even if Kwiatkowski is not a great risk to reoffend.

¶9 Next, K.I. addressed the sentencing court, stating that she was "shocked" when she started receiving personal text messages from Kwiatkowski. She "panicked" when Reinersman left her in the room alone with Kwiatkowski. She felt trapped because the door was locked from inside. When Kwiatkowski shoved her against the lockers and thrust his fingers inside her vagina, K.I. reminded him that the other officer might return. Kwiatkowski answered that he would not return.

K.I. said she thought she saw a camera in the room and that when she mentioned it to Kwiatkowski, he told her he had turned it off.

¶10     Trial counsel requested that a prison sentence be imposed but stayed in favor of probation. Counsel noted that Kwiatkowski had no prior criminal record and a good work history and pointed to Westendorf's opinion that Kwiatkowski presented a low risk to reoffend. Counsel also drew the court's attention to the collateral consequences that Kwiatkowski suffered: the loss of his job, his home, his marriage, and his reputation. Counsel reminded the court that Kwiatkowski would have to register as a sex offender and was facing civil liability and informed it of the rehabilitative measures he had taken since his arrest.

¶11     In pronouncing sentence, the circuit court emphasized that Kwiatkowski's actions were predatory in nature and constituted a grave and far-reaching violation of trust. It focused on the severity of the offenses, explaining that he "betrayed" not just the victims but also violated the trust placed in him by the system and the public. The court explained, "you have betrayed your fellow officers, the sheriff's department, the drug and treatment programs of this community, of which some of these people participate in, and the judges who place people in the custody of the jail for safekeeping."

¶12     The sentencing court pointed to the fact that Kwiatkowski's position enabled him to invade the victims' privacy. "You violated their privacy by going into their files that you had no right to do that. You had no right to use their phone numbers to contact them outside of the workplace. You have violated those people and this system in so many ways I would be talking too long if I kept going." That was "predatory" behavior, the court explained, as was Kwiatkowski's choice of vulnerable victims.

¶13 In discussing the assault on K.I., the sentencing court stated:

> The predatory nature of the offense against [K.I.], of shutting off the camera, of getting the other officer to leave the room, which is another interesting subject completely, and getting her up in the corner, tell me how that is different than in the dark of night, going down an alley, and grabbing a woman and pushing her up against a wall, and physically violating her body?

The court also observed that Westendorf's report did not discuss much of Kwiatkowski's predatory behavior.

¶14 The sentencing court determined that probation would unduly depreciate the seriousness of the offenses because they were committed against the most vulnerable of victims: women who are locked up. The court was not impressed with Kwiatkowski's explanations for his actions, focusing as they did on his own feelings and his neediness rather than on the hard facts that he sexually assaulted women and violated the public trust. The circuit court imposed consecutive sentences as follows: five years of initial confinement followed by three years of extended supervision on the sexual assault; one year of initial confinement followed by two years of extended supervision on the misconduct in public office.

¶15 Kwiatkowski filed a postconviction motion seeking resentencing or sentence modification. In support of resentencing, he alleged that the circuit court (1) relied on the "factually inaccurate assumptions" that he asked Reinersman to leave the room and turned off the camera before assaulting K.I.; and (2) erroneously exercised its sentencing discretion "by failing to provide an adequate explanation for its sentence," including how the sentence constituted "the minimum amount of custody or confinement which is consistent with the protection of the public, the gravity of the offense and the rehabilitative needs of the defendant" under *McCleary*

*v. State*, 49 Wis. 2d 263, 276, 182 N.W.2d 512 (1971), and ***State v. Gallion***, 2004 WI 42, ¶¶23, 44, 270 Wis. 2d 535, 678 N.W.2d 197.  Kwiatkowski further alleged that sentence modification was warranted due to the existence of the following new factors: the inaccurate information alleged in support of resentencing; the court's misapprehension of the "true nature" of K.I.'s relationship with Kwiatkowski; and the court's "erroneous assumptions" about Westendorf's sex offender evaluation.

¶16    At a hearing on his postconviction motion, Kwiatkowski produced evidence tending to show that there was no camera in the room where he assaulted K.I., and that he did not ask Reinersman to leave them alone.  In response to statements made by the prosecutor and the circuit court at sentencing, Westendorf testified to explain or justify her methodology.  Without objection, Kwiatkowski offered a statement made by K.I. to investigating officers when she first reported the assault.  He alleged that her statement contradicted her comment at sentencing that she was "completely shocked" when she first received a text from Kwiatkowski. According to the postconviction motion, K.I. did not become upset with or block Kwiatkowski's texts until after he sexually assaulted her.  The court denied the postconviction motion in full.  Kwiatkowski appeals.

## DISCUSSION

*The circuit court did not violate Kwiatkowski's due process right to be sentenced on the basis of accurate information.*

¶17    Kwiatkowski maintains that the circuit court relied on inaccurate information at sentencing, namely that prior to assaulting K.I., Kwiatkowski turned off the camera in the office and arranged for Reinersman to leave them alone. According to Kwiatkowski, these misapprehensions led the sentencing court to

determine that the assault was pre-planned and therefore, especially aggravated in nature.

¶18 A criminal defendant has a due process right to be sentenced on the basis of accurate information. *State v. Tiepelman*, 2006 WI 66, ¶9, 291 Wis. 2d 179, 717 N.W.2d 1. To establish that he or she is entitled to resentencing on this basis, a defendant must prove by clear and convincing evidence that (1) inaccurate information was before the sentencing court, and (2) the sentencing court actually relied on the inaccurate information. *Id.*, ¶¶2, 26. If the defendant makes this showing, the burden shifts to the State to prove beyond a reasonable doubt that the error was harmless. *State v. Travis*, 2013 WI 38, ¶¶23, 347 Wis. 2d 142, 832 N.W.2d 491. Review of this constitutional issue is de novo. *Id.*, ¶20.

¶19 Assuming that Kwiatkowski did not turn off a camera or ask Reinersman to leave the room, and that the circuit court actually relied on this misinformation at sentencing, we conclude that any error was harmless. That is, there is no reasonable probability that the sentencing court's specific reference to these circumstances contributed to Kwiatkowski's sentence. *Id.*, ¶86.

¶20 These minor clarifications do not lessen the predatory nature of Kwiatkowski's crimes. As the postconviction court explained, "Mr. Kwiatkowski in his commission of these crimes ... [took] advantage of the location, the files. He obtained their personal phone numbers by going into private files of the department and contacting some of these people outside the job." *See State v. Alexander*, 2015 WI 6, ¶¶30, 34-35, 360 Wis. 2d 292, 858 N.W.2d 662 (though our review is de novo, we will consider the circuit court's statements made in response to a postconviction motion for resentencing). Kwiatkowski knew that his actions were not being recorded and waited for the other officer to leave the room. K.I. felt trapped because

she knew the door was locked. When she tried to fend Kwiatkowski off by mentioning the possibility of the other officer's return or a surveillance camera, he told her that the officer would not return and they were not being recorded. As the postconviction court stated, whether or not Kwiatkowski actually turned off a camera, he committed "a significant and sufficient betrayal of the public trust given to … an officer in charges of inmates …."

¶21 Kwiatkowski argues that the circuit court's misapprehensions that he turned off a camera and asked Reinersman to leave the room must have led it to conclude that the assault of K.I. was pre-planned. According to Kwiatkowski, it is folly to conclude that any error was harmless because pre-planning "is far *more* aggravated than spontaneously taking advantage of an opportunity presented to commit that offense, as the evidence shows in fact happened here."

¶22 We are not persuaded. While the degree of premeditation may be an important fact in some cases, the sentencing and postconviction transcripts in these matters contradict Kwiatkowski's argument. For one thing, it is an overstatement to characterize the assault of K.I. as "spontaneous" given that Kwiatkowski surreptitiously obtained her cell phone number and texted her before the assault, and considering his pattern of similar conduct with other female inmates. Additionally, the circuit court was concerned with Kwiatkowski's abuse of authority. What matters is that Kwiatkowski violated K.I.'s privacy and took full advantage of being alone with a vulnerable victim knowing that there was no surveillance camera to capture his misconduct.

*The circuit court properly exercised its discretion in imposing Kwiatkowski's sentence.*

¶23    Kwiatkowski maintains that he is entitled to resentencing because the sentencing court erroneously exercised its discretion by (1) failing to provide a rational explanation for why a near maximum initial confinement term was necessary rather than some lesser term, and (2) failing to acknowledge and apply its overriding obligation at sentencing to impose the least punishment consistent with the purposes of the sentence imposed.

¶24    It is a well-settled principle of law that sentencing is committed to the circuit court's discretion. *See* ***Gallion***, 270 Wis. 2d 535, ¶17. On review, we afford the sentencing court a strong presumption of reasonability, and if discretion was properly exercised, we follow "a consistent and strong policy against interference" with its determination. ***Id.***, ¶18. We will sustain a sentencing court's reasonable exercise of discretion even if this court or another judge might have reached a different conclusion. ***State v. Odom***, 2006 WI App 145, ¶8, 294 Wis. 2d 844, 720 N.W.2d 695.

¶25    In fashioning sentence, the circuit court must consider the gravity of the offense, the character of the offender, and the need to protect the public. ***State v. Ziegler***, 2006 WI App 49, ¶23, 289 Wis. 2d 594, 712 N.W.2d 76. The weight to be given to each factor is committed to the court's sound discretion. ***Id.***

¶26    Kwiatkowski acknowledges that the circuit court considered the primary sentencing factors, discussed mitigating and aggravating circumstances, and explained its determination that probation was not appropriate. Pointing out that the PSI recommended two to three years of initial confinement, he complains

that the court "did not further explain why a near maximum initial confinement term twice that long, rather than some lesser but still significant prison term, was either appropriate or necessary." He makes the related argument that the sentencing court failed to explicitly state why its sentence constituted "the minimum amount of custody or confinement which is consistent with the protection of the public, the gravity of the offense and the rehabilitative needs of the defendant" under *McCleary* and *Gallion*.

¶27 We are not persuaded. "[T]he exercise of discretion does not lend itself to mathematical precision." *Gallion*, 270 Wis. 2d 535, ¶49. "The court must provide an explanation for the general range of the sentence imposed, not for the precise number of years chosen, and it need not explain why it did not impose a lesser sentence." *State v. Davis*, 2005 WI App 98, ¶26, 281 Wis. 2d 118, 698 N.W.2d 823 (citing *Gallion*, 270 Wis. 2d 535, ¶¶49–50, 54–55). "[W]e do not expect circuit courts to explain, for instance, the difference between sentences of 15 and 17 years." *Gallion*, 270 Wis. 2d 535, ¶49. *See also State v. Taylor*, 2006 WI 22, ¶30, 289 Wis. 2d 34, 710 N.W.2d 466 (a sentencing court is not required "to provide an explanation for the precise number of years chosen").

¶28 The circuit court properly exercised its sentencing discretion on the record. It identified proper objectives, considered relevant factors, and imposed a sentence well within the range authorized by law. It properly confirmed that exercise of discretion at the postconviction hearing. Kwiatkowski has not shown any "unreasonable or unjustified basis" for his sentence that would cause us to question its propriety. *See Taylor*, 289 Wis. 2d 34, ¶18 (quoted source omitted).

11

*The circuit court properly denied Kwiatkowski's postconviction motion seeking to modify his sentence based on the existence of new factors.*

¶29    As he argued postconviction, Kwiatkowski maintains that the following constitute new factors entitling him to sentence modification: (1) correction of the sentencing court's misapprehensions that prior to assaulting K.I., he turned off the camera and asked the second officer to leave the room; (2) correction of the sentencing court's misunderstanding of the nature of his relationship with K.I.; and (3) clarification of his risk to sexually reoffend as explained by the postconviction testimony of Westendorf.

¶30    A circuit court may modify a sentence based on the existence of a new factor. *State v. Harbor*, 2011 WI 28, ¶35, 333 Wis. 2d 53, 797 N.W.2d 828. A new factor is a set of facts highly relevant to the imposition of sentence but not known to the judge at the time of the original sentencing, either because it was not then in existence or because it was unknowingly overlooked by all the parties. *Id.*, ¶40. The defendant bears the burden of establishing the existence of a new factor by clear and convincing evidence. *Id.*, ¶36. Whether a new factor exists presents a question of law that this court reviews independently. *Id.*

¶31    We conclude that none of the information asserted constitutes a new factor. First, it was not "new." At sentencing, Kwiatkowski knew that there was no camera, that he did not ask Reinersman to leave, and the nature of his relationship with K.I. His asserted corrections were not overlooked by all the parties. *See State v. Crockett*, 2001 WI App 235, ¶14, 248 Wis. 2d 120, 635 N.W.2d 673. Second, his postconviction corrections were not based on facts highly relevant to the circuit court's sentence. Highly relevant was Kwiatkowski's abuse of authority and the public trust, the violence of his assault on K.I., and the predatory nature of his

actions. He waited for Reinersman to leave the room and, knowing that there was no camera in the room, seized the opportunity by shoving K.I. up against the lockers and jamming his fingers inside her vagina against her will. His predatory conduct involved accessing personal information from the corrections files of three female inmates, including K.I. This enabled him to call and text these inmates from a blocked or secret cell phone number, and to cajole K.R.J. into an inappropriate relationship while she was still on electronic monitoring.

¶32 With regard to Westendorf's evaluation, the circuit court never said at sentencing or postconviction that it rejected her opinions regarding Kwiatkowski's risk of recidivism or sexual deviance. Rather, the court did not give her analysis much weight. This, too, was a proper exercise of discretion despite the "new" information that Kwiatkowski claims bolsters Westendorf's opinions.

*By the Court.*—Judgments and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

13